STATE OF NEBRASKA, APPELLEE, V.
NORMA E. LOPEZ, APPELLANT.
743 N.W.2d 351

Filed January 4, 2008.    No. S-06-1251.

James R. Mowbray and Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Erin E. Leuenberger for appellee.

Heavican, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Heavican, C.J.

## INTRODUCTION

Norma E. Lopez was convicted of first degree murder and use of a weapon to commit a felony. Her convictions and sentences were affirmed by this court in *State v. Lopez.*[1] Lopez filed a verified motion for postconviction relief which was denied after an evidentiary hearing. Lopez appeals.

## FACTS

The facts surrounding Lopez' convictions were set forth in *Lopez.* We supplement those facts as necessary.

On March 25, 1994, the defendant had a party in her trailer home. During the course of the party, the defendant and a guest, Sotero Gandarilla, started to argue. The argument continued while the defendant and Gandarilla went into a bedroom in the defendant's home. The defendant's daughter was sitting in the bedroom, and the defendant asked the daughter to find the bullets for her gun. The daughter told the defendant that she did not know where the bullets were and then went to a neighbor's house for help.

Upon returning to the home of the defendant, the daughter heard a gunshot. Upon entering the bedroom, witnesses saw Gandarilla's body on the floor and the defendant holding a gun.[2]

At this point, the witnesses who saw Lopez standing over Sotero Gandarilla left Lopez' home. Lopez' daughter then returned with the neighbor. The neighbor testified that she asked Lopez " '[w]hy did you do it?' " Lopez responded that Gandarilla had told her that "she was not . . . the woman for [him]." The

---

[1] *State v. Lopez,* 249 Neb. 634, 544 N.W.2d 845 (1996).

[2] *Id.* at 637, 544 N.W.2d at 850.

neighbor then helped Lopez and four of Lopez' children get back to the neighbor's home, where Lopez attempted to call relatives. According to the neighbor, Lopez was not able to dial the telephone, nor was Lopez able to provide to the neighbor the correct telephone number so that the neighbor could place the call for Lopez. The neighbor testified that Lopez then left the neighbor's home, apparently to retrieve a fifth daughter who remained in Lopez' home.

At about the same time, the record establishes that

> [t]he police [had] responded to a call of someone hearing a gunshot. An officer went to the defendant's home. The officer knocked and the defendant appeared. The officer asked if he could enter, and the defendant replied that he could not and that she would check the trailer for him. Soon after, the defendant returned to the front door of the trailer and stated to the officer, "He's dead; he's been shot." She initially refused to give the name of the victim.
>
> The officer asked, "Can I come in and check?" to which the defendant answered, "Yes, you can." The officer found the body. The officer asked her the identity of the individual on the floor and the defendant's name and her date of birth, to which the defendant responded, "What? Do you think I shot him?" At that point, the officer informed the defendant of her *Miranda* rights. The officer asked if the defendant waived her rights and wanted to talk to him, to which she replied, "Yeah." It appeared to the officer that the defendant had been drinking and had apparently urinated on herself, but that she understood the questions and the situation. Several times during the preliminary investigation, the defendant told the officer, "Why don't you just go ahead and shoot me?" . . .
>
> At that point, Lt. Rodger L. Williams arrived to take over the investigation. A high-powered rifle with one spent round in its chamber was found in the bedroom.
>
> The defendant was jailed. An interview of the defendant by Williams took place the next morning at 8 o'clock at the jail at the defendant's request. The defendant signed a *Miranda* rights waiver. During the interview, Williams

asked if the defendant knew why the shooting had occurred, to which the defendant stated, "Yes, because I shot him for no goddamn reason. Just for . . . being drunk and stupid I know." In response to a question as to whether the events of the previous evening occurred because the defendant had been drinking, she responded, "Oh, no, no, no. I have been that drunk before and never pulled a gun on my old man." The ammunition for the gun was found following a search pursuant to a search warrant.

It was later determined that "[t]he death of Sotero Gandarilla [was] due to a perforating gunshot wound to the neck, which caused a marked destruction of the soft tissue of the neck, severed the internal carotid artery, severed the internal and external jugular veins and, also, severed the larynx."[3]

At trial, Lopez was represented by two attorneys with the Hall County public defender's office. That office also represented Lopez on direct appeal. This court affirmed Lopez' convictions.

On April 1, 2003, Lopez filed a verified motion for postconviction relief. An amended motion was filed on March 5, 2004. That motion alleged ineffective assistance of counsel in several particulars. The district court granted an evidentiary hearing. At the hearing, depositions of Lopez and both trial counsel were introduced into evidence. In addition, Lopez and lead counsel testified. On October 17, 2006, Lopez' motion was denied. In its order, the district court specifically addressed Lopez' contention that a plea agreement was not communicated to her, finding that Lopez suffered no prejudice from trial counsel's deficiencies. As to Lopez' other allegations, the district court generally concluded that it could not "find from the evidence that counsel's performance was deficient and that any deficient performance prejudiced the defense."

## ASSIGNMENTS OF ERROR

On appeal, Lopez argues that the district court erred in denying her motion for postconviction relief. In particular, Lopez

---

[3] *Id.* at 637-38, 544 N.W.2d at 850-51.

contends, restated and renumbered, that the district court erred by not finding that her trial counsel was ineffective in (1) failing to adequately inform her of plea offers and in failing to pursue plea offers on her behalf, (2) failing to object to the State's reliance of Lopez' invocation of her right to remain silent, (3) failing to challenge the State's contention that Lopez had animosity or malice against Gandarilla, (4) failing to adequately present opening statements, (5) failing to properly challenge the testimony of the State's fingerprint evidence expert and in failing to present expert testimony to counter the State's expert, and (6) failing to adequately advise Lopez of her right to testify in her own behalf.

## STANDARD OF REVIEW

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[4] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[5] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[6] an appellate court reviews such legal determinations independently of the lower court's decision.[7]

## ANALYSIS

■ On appeal, Lopez assigns as error that the district court failed to find that her trial counsel was ineffective in several particulars. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland*,[8] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a

---

[4] *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006).

[5] *Id.*

[6] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[7] *State v. Sims, supra* note 4.

[8] *Strickland v. Washington, supra* note 6.

lawyer with ordinary training and skill in criminal law in the area.[9] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[10] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[11] The two prongs of this test, deficient performance and prejudice, may be addressed in either order. This standard also applies to guilty pleas based on ineffective assistance of counsel[12] and in cases involving the alleged failure to communicate the offer of a plea agreement.[13]

In determining whether a trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably.[14] When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[15]

*Failure to Communicate Plea Agreement.*

Lopez first argues that she received ineffective assistance of trial counsel with respect to plea negotiations. In particular, Lopez contends that a plea agreement for second degree murder was not communicated to her.

At the postconviction evidentiary hearing, the parties stipulated that an offer of second degree murder and use of a weapon had been communicated to defense counsel prior to trial. In overruling Lopez' motion with respect to this allegation, the district court, in keeping with this stipulation, found that Lopez' trial counsel failed to convey that agreement to Lopez. However,

---

[9] *State v. Sims, supra* note 7.

[10] *Id.*

[11] *Id.*

[12] *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). See, also, *State v. Malcom*, 12 Neb. App. 432, 675 N.W.2d 728 (2004).

[13] *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001); *Engelen v. U.S.*, 68 F.3d 238 (8th Cir. 1995); *Toro v. Fairman*, 940 F.2d 1065 (7th Cir. 1991); *Dew v. State*, 843 N.E.2d 556 (Ind. App. 2006).

[14] *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

[15] *State v. Canbaz*, 270 Neb. 559, 705 N.W.2d 221 (2005).

the district court concluded that Lopez was not prejudiced by this failure, as Lopez had not demonstrated that she would have accepted the offer.

At the evidentiary hearing, lead counsel testified that he recalled the State's making one plea offer for first degree murder in which the State would decline to pursue the death penalty. Lead counsel indicated he did not believe this offer was a good offer, as he found it unlikely that Lopez would be sentenced to death, but he brought the offer to Lopez. He recalled that Lopez thought about the offer for a few days, but indicated that Lopez was "adamant" about rejecting the offer. Second chair counsel, in his deposition, echoed this, testifying that Lopez wanted to go to trial because she did not remember what happened at the time of the shooting. According to lead counsel, he and second chair counsel suggested later that Lopez offer to plead guilty to manslaughter and use of a weapon, but Lopez refused to let counsel make this offer to the State and insisted upon going to trial.

Both counsel also testified that Lopez seemed to generally understand what was going on in connection with the charges filed against her. Lead counsel testified that he attempted to discuss with Lopez the events surrounding the murder, but that Lopez always indicated she did not remember what had happened. Lead counsel indicated that he met with Lopez once or twice a week for about an hour each time. It is not clear from the record, but it appears these meetings occurred over a somewhat lengthy period of time prior to trial. Lead counsel also testified that he went over police reports with Lopez; provided to Lopez copies of depositions taken in the case; and, as a matter of course, would have discussed the State's evidence and witnesses against Lopez in general terms, including forensic evidence. Lead counsel also indicated it was his recollection that Lopez was present at the formal hearings held in the case, which included a suppression motion.

Lopez testified that only one offer, which involved serving between 20 and 40 years in prison, was communicated to her. Lopez specifically testified that no offer to plead guilty to second degree murder was ever communicated to her and that if such had been offered, she would have accepted.

Lopez generally testified that she had expressed a desire to know what had happened at the time of Gandarilla's death, but that if she could have found out without going to trial, that would have been acceptable. Lopez testified that she received no copies of police reports or depositions and did not recall attending any hearings in the case. Lopez also indicated that even at the time of the postconviction evidentiary hearing, she was uncertain as to the difference between no contest and guilty pleas, and that had she understood the difference before trial, she would have pled no contest or guilty.

As an initial matter, we conclude that the district court's finding that Lopez' counsel failed to communicate the plea agreement in question to Lopez was not clearly erroneous. We further conclude that such failure was deficient as a matter of law. However, we also agree with the district court that Lopez has not demonstrated that she would have accepted the plea agreement for second degree murder. As such, Lopez cannot show she was prejudiced by counsel's failure to communicate the plea agreement.

The prejudice inquiry in cases involving plea agreements focuses upon whether counsel's ineffective performance affected the outcome of the plea process.[16] Various standards exist for determining whether a defendant has made a showing of prejudice. For example, in the Eighth Circuit, "[t]o establish prejudice . . . the movant must show that, but for his counsel's advice, he would have accepted the plea. To command an evidentiary hearing, the movant must present some credible, nonconclusory evidence that he would have pled guilty had he been properly advised."[17]

However, the Seventh Circuit, citing *Strickland*, requires a defendant to "establish through objective evidence that there is a reasonable probability that, but for counsel's advice, he would have accepted the plea."[18] The Sixth Circuit largely concurs with the Seventh Circuit's standard, except it notes that

---

[16] See *Hill v. Lockhart, supra* note 12.

[17] *Engelen v. U.S., supra* note 13, 68 F.3d at 241.

[18] *Toro v. Fairman, supra* note 13, 940 F.2d at 1068.

"*Strickland* . . . only requires that a defendant demonstrate that there is a 'reasonable probability' that the result of the proceeding would have been different. The Supreme Court has imposed no requirement that the defendant meet his burden of proof through objective evidence."[19]

We concur with the Sixth Circuit's reading of *Strickland* and hold that the defendant must demonstrate a "reasonable probability" that, but for counsel's deficiency, he or she would have accepted the plea. We conclude, however, that Lopez cannot meet this standard.

A review of the record reveals that Lopez testified she did not understand the difference between guilty and no contest pleas. Lopez contends that had she understood that difference, she would have pled guilty or no contest to the plea agreement for second degree murder offered by the State. Lopez stated during her testimony that she did not remember the shooting and thought trial was the only way to find out what happened. Lopez claimed that trial counsel did not share any of the State's case with her and that had they done so, she would have accepted that version of events and not gone to trial.

However, evidence was introduced by the State that contradicts Lopez' assertion that she would have pled guilty to second degree murder. Both counsel testified that Lopez rejected one plea agreement and refused to let them approach the State with another suggested agreement—this one for manslaughter. They both testified that Lopez wanted to go to trial, with lead counsel testifying that she was "adamant" about it.

Moreover, Lopez' contention that she was not informed as to the State's case against her is contradicted by lead counsel's testimony. He testified that he met with Lopez, provided to her copies of the depositions taken in the case, and outlined the State's case and evidence against her. He further testified that Lopez was present at the formal hearings in her case, a fact confirmed by a review of the various bills of exceptions from those hearings.

---

[19] *Magana v. Hofbauer, supra* note 13, 263 F.3d at 547 n.1. See, also, *Dew v. State, supra* note 13.

The district court found Lopez' contention that she would have pled guilty to be not credible. We conclude that this finding of fact was not clearly erroneous. Lopez did not meet her burden—she has not shown there was a reasonable probability that she would have accepted the second degree murder plea agreement offered by the State. As such, Lopez' first assignment of error is without merit.

*Right to Remain Silent.*

Lopez next argues that the State improperly relied upon her invocation of her right to remain silent and that her counsel was ineffective for failing to object accordingly. Lopez argues that the State's actions violated *Doyle v. Ohio*.[20]

In *Doyle*, the U.S. Supreme Court held that the State may not "seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest."[21] In discussing *Doyle,* this court has noted also that *Doyle* stands for the proposition that "a defendant's postarrest, post-*Miranda* silence is 'insolubly ambiguous' as to whether the defendant is guilty or merely exercising his rights in accordance with the implicit assurance in the *Miranda* warnings that 'silence will carry no penalty.' "[22]

The State, in its closing arguments, made the following comments of which Lopez now complains:

> When Sergeant Ochsner reads her her Miranda rights, she says, "I understand them." No evidence to the contrary.
>
> When she gets to the jail, if you'll remember testimony of the Corrections Officer Gorman and Lieutenant Castleberry, Corrections Officer Gorman tells you that when they are trying to ask a question and she won't answer, what does she do, in fact? If Castleberry asks her a question, she turns around and faces Gorman and vice versa.

---

[20] *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

[21] *Id.*, 426 U.S. at 611.

[22] *State v. Harms*, 263 Neb. 814, 822-23, 643 N.W.2d 359, 369 (2002).

She knows she doesn't have to answer questions, and she won't . . . .

The State contends that these statements in closing arguments were simply a proper comment on Sgt. Ronald Gorman's testimony at trial that when Lopez "'was originally brought in, she would not answer any questions'" and "'[i]f you did ask her [a] question, she would just turn away from you and not talk.'"[23] The State argues that this testimony was not objected to at trial and such is not raised now, thus Lopez has waived any error. Alternatively, the State contends that the statement in closing was not a *Doyle* violation or that any error which may have occurred was harmless.

As an initial matter, we disagree that the statements in closing were simply a proper comment on the evidence. To the extent that the prosecutor noted the content of the testimony of Lt. James Castleberry and corrections officer Cynthia Gorman, the statements can be considered a proper comment on the evidence. However, the prosecutor also noted that Lopez "knows she doesn't have to answer questions, and she won't." This statement could be read as inviting the jury to speculate as to the reasons behind Lopez' silence.

We also disagree with the State that the prosecutor's comment in closing was not a *Doyle* violation. The apparent basis for the State's argument is that in *Doyle*, the defendant's silence was not admissible to impeach the defendant's testimony at trial. However, in this case, Lopez' silence was not used to impeach her testimony at trial, since she did not testify.

Though *Doyle* did involve the impeachment of a defendant's trial testimony, we do not believe it is limited to such circumstances. In *Wainwright v. Greenfield*[24]—a case in which the defendant did not testify—the prosecution was prohibited from relying on a defendant's postarrest, post-*Miranda* silence as substantive evidence of the defendant's sanity. Moreover, the reasoning behind both *Doyle* and *Wainwright* is the fundamental unfairness implicit in promising a defendant his or her silence

---

[23] Brief for appellee at 35.

[24] *Wainwright v. Greenfield*, 474 U.S. 284, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986).

will not be used against him or her, then essentially using that silence against the defendant. We conclude that the State's comments in closing were a violation of *Doyle.*

Assuming that Lopez' counsel was deficient in failing to object to the State's violation of *Doyle,* Lopez still cannot show a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Evidence beyond a reasonable doubt was presented at trial showing that Lopez was guilty of first degree murder. There was testimony that Lopez and Gandarilla had been arguing before the shooting. Lopez' daughter testified that she was asked by her mother to "find the bullets." Lopez herself made certain statements suggesting her guilt and informed her neighbor that she shot Gandarilla because he told her that she was "not the woman for [him]." In addition, police testified that Lopez indicated she shot Gandarilla for "no good reason," but because she was "drunk and stupid." Lopez further indicated that she had "been that drunk before" but had "never pulled a gun on [her] old man." Lopez has not shown that she was prejudiced by any deficiency by counsel in failing to object to any *Doyle* violation made by the State. As such, Lopez cannot show that counsel was ineffective. Lopez' second assignment of error is without merit.

*Remaining Assignments of Error.*

Lopez makes several other contentions regarding the alleged ineffectiveness of counsel. We have reviewed the record and conclude those allegations are also without merit. We therefore reject Lopez' third through sixth assignments of error.

## CONCLUSION

For the reasons stated above, we conclude that Lopez' counsel was not ineffective and, accordingly, affirm the district court's denial of postconviction relief.

AFFIRMED.