761 N.W.2d 907 (2009)
277 Neb. 316
STATE of Nebraska, appellee,
v.
Kenneth RHODES, appellant.
No. S-07-1198.
Supreme Court of Nebraska.
March 6, 2009.
*909 James R. Mowbray and Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.
*910 HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Kenneth Rhodes was convicted in 1998 of possession of a firearm by a felon and found to be a habitual criminal. He was sentenced to 40 to 60 years' imprisonment. Rhodes sought postconviction relief. Following an evidentiary hearing, Rhodes' request was denied. He appeals. We affirm the district court's denial of postconviction relief.

FACTUAL BACKGROUND
On December 31, 1997, officers with the Grand Island Police Department initiated a traffic stop of the vehicle which Rhodes was operating. A subsequent search uncovered a shotgun wrapped in a towel in the back seat of Rhodes' vehicle. Further investigation revealed that Rhodes was a felon; in addition, law enforcement believed that Rhodes' operator's license had been suspended and that Rhodes had been operating the vehicle while under the influence of drugs or alcohol.
An amended information was filed against Rhodes on April 17, 1998, charging him with one count of possession of a firearm by a felon; driving under the influence (DUI), first offense; driving during suspension (DUS), second offense; and being a habitual criminal. Following a bench trial held on July 27, Rhodes was found guilty of being a felon in possession of a firearm and not guilty of the DUI and DUS charges. The habitual criminal charge was deferred pending an enhancement hearing.
At the enhancement hearing, evidence of prior felony convictions was introduced: convictions in 1977 for first degree sexual assault and sodomy, and a conviction in 1988 for attempted first degree sexual assault. Rhodes was found to be a habitual criminal and was subsequently sentenced to 40 to 60 years' imprisonment. On appeal, in case No. A-98-1142, Rhodes' conviction and sentence were affirmed in a memorandum opinion filed on June 2, 1999, by the Nebraska Court of Appeals. Rhodes filed a petition for further review, which was denied. Rhodes was represented by the Hall County public defender's office at trial and on direct appeal.
Rhodes sought postconviction relief in 2004. He filed a pro se petition, but was later appointed counsel. Counsel filed an amended and a second amended petition. An evidentiary hearing was granted. Following that hearing, postconviction relief was denied. Rhodes appeals that denial.

ASSIGNMENTS OF ERROR
On appeal, Rhodes assigns, restated, that the district court erred in not granting him postconviction relief. In particular, Rhodes alleges the district court erred by not finding that his trial counsel was ineffective for failing to (1) ascertain Rhodes' mental status and competency for trial and sentencing; (2) make plea counteroffers; (3) adequately advise Rhodes of his right to testify; and (4) address constitutional, statutory, and decisional authority which would have prevented the use of Rhodes' prior felonies both in support of the underlying charges of possession of a firearm by a felon and as enhancement for the charge of being a habitual criminal.

STANDARD OF REVIEW
Appellate review of a claim of ineffective assistance of counsel is a mixed *911 question of law and fact.[1] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[2] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[3] an appellate court reviews such legal determinations independently of the lower court's decision.[4]

ANALYSIS
On appeal, Rhodes assigns as error that the district court failed to find his trial counsel was ineffective in several particulars. In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with Strickland,[5] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[6] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[7] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[8] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.
In determining whether a trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably.[9] When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[10]
Before addressing the specific arguments Rhodes makes on appeal, we note that the issues raised are not procedurally barred. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal,[11] when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.[12]

Failure to Ascertain Competency for Trial and Sentencing.
In his first assignment of error, Rhodes argues he received ineffective assistance of counsel when his trial counsel failed to ascertain whether he was competent for trial and again for sentencing.
A review of the record in this case indicates Rhodes had a history of drug abuse prior to his arrest. Once in custody, Rhodes was prescribed "amitriptyline." Though not entirely clear from the record, Rhodes was apparently released on bond in February 1998. On May 21, the day set *912 for trial, Rhodes attempted to commit suicide by drug overdose.
Following his suicide attempt, Rhodes was hospitalized and then returned to custody. Upon his return to custody, Rhodes was again prescribed medication. According to Rhodes' testimony, he was not taking all of this medication, as he was "hoarding" it for a second suicide attempt.
A bench trial was held on July 27, 1998, and Rhodes was found guilty of being a felon in possession of a weapon and not guilty of DUI and DUS. On August 13, Rhodes was found to be a habitual criminal. Sentencing was set for September 22, but was continued to October 13, apparently at trial counsel's request due to Rhodes' "medical condition."
On September 24 and 27 and October 4, 1998, Rhodes wrote letters to the district court suggesting that because of the medication he was taking, he had no memory of his trial. Rhodes was eventually sentenced on October 13. Just prior to sentencing, the district court brought Rhodes' letters to trial counsel's attention; there is no indication from the record that counsel discussed the letters with Rhodes in court prior to sentencing.
We first address Rhodes' allegation that counsel failed to ascertain his competency at the time of trial. It is undisputed that there is evidence Rhodes had mental health issues preceding trial. In particular, Rhodes attempted suicide just prior to trial. In addition, Rhodes' sister testified that while Rhodes was in jail, "he was more rational" than after he was released on bond. She testified that after Rhodes was released on bond, Rhodes was "different" and "way out there at times where [she] didn't even know what he was ta[l]king about." Of course, it was while released on bond that Rhodes made his suicide attempt.
But in addition to the testimony of Rhodes' sister, the record also includes the testimony of trial counsel. According to counsel, he had represented Rhodes on a number of charges over a period of about 10 years and believed he had a good "rapport" with Rhodes. The record shows that while counsel did not visit Rhodes while Rhodes was hospitalized, counsel did have contact with Rhodes between the suicide attempt and trial. Counsel testified that he had no reason to believe Rhodes was not competent to stand trial and that Rhodes' actions were consistent with counsel's history with Rhodes. Counsel testified that he believed Rhodes "would respond like Kenneth Rhodes" and "in what I would consider to be sane answers for a person of his social history."
The district court specifically found that trial counsel "had no indication in his dealings with [Rhodes] that [Rhodes] did not understand." This finding is supported by the record and is not clearly erroneous. We therefore conclude that Rhodes has failed to meet his burden of showing that counsel was deficient for failing to ascertain Rhodes' competency for trial.
Rhodes also contends that trial counsel was ineffective for failing to ascertain his competency prior to sentencing. In support of this contention, Rhodes points to the letters he wrote to the district court between trial and sentencing which suggest that Rhodes did not recall his trial or conviction. Rhodes argues that counsel's failure to address these letters with him prior to sentencing was deficient performance. Besides Rhodes' deposition testimony, these three letters are the sole evidence suggesting that Rhodes was incompetent at the time of sentencing.
The district court addressed Rhodes' contention that he was incompetent at sentencing and found Rhodes "has indicated that he understood what was transpiring *913 through going up to and through the trial of the matter and to the time of sentence." The district court noted it believed Rhodes' claim, coming only after conviction, was "self-serving." We find no clear error in this finding. We therefore conclude that Rhodes has also failed to meet his burden of showing that counsel was deficient for failing to ascertain Rhodes' competency at the time of sentencing.
Thus, Rhodes has failed to meet his burden to show that trial counsel was deficient for failing to ascertain Rhodes' competency at trial and at sentencing. Rhodes' first assignment of error is without merit.

Failure to Pursue Plea Agreement.
In his second assignment of error, Rhodes contends he received ineffective assistance of counsel when counsel failed to inform Rhodes that he had the ability to present counteroffers in response to the State's plea offers.
As an initial matter, there is a dispute as to the correct standard to apply in cases involving plea negotiations. The State relies upon the two-part test set forth in Strickland and contends that in order to show Rhodes is entitled to postconviction relief, he must show that but for his counsel's errors, the result of the plea negotiation process would be different.
On the other hand, Rhodes argues that he must show evidence that (1) for nonstrategic reasons, his or her attorney ignored a request to pursue a plea agreement and (2) the prosecution would have cooperated with the plea or had some reason to cooperate with the plea. This was the test stated by the district court; however, Rhodes argues that the district court failed to consider whether the State had reason to cooperate with the plea. In support of this standard, Rhodes relies upon Lipson v. U.S.[13] and Brown v. Doe.[14]
We have reviewed Lipson and Doe and are not persuaded that either case sets forth a standard different from the standard enunciated in Strickland for ineffective assistance claims. We further note that the test set forth in Strickland is applicable to claims for the ineffective assistance of counsel when the defendant was convicted following a trial. And the U.S. Supreme Court in Hill v. Lockhart[15] extended Strickland to challenges to guilty pleas based upon ineffective assistance of counsel. We can conceive of no reason to apply a different standard to the ineffective assistance of counsel claim presented by this case. We therefore apply Strickland to Rhodes' claim that his trial counsel was ineffective because he did not inform Rhodes that Rhodes could propose counteroffers to the State's plea offers. We now turn to that claim.
At his deposition, Rhodes testified that he was unaware he could make offers or counteroffers to the State's plea offers. However, Rhodes also testified that he asked counsel to communicate an offer to the State. Given the nature of that offerthat the State release Rhodes for 5 to 7 days prior to sentencingcounsel informed Rhodes that the offer was "farfetched," and, indeed, it is unclear whether the offer was even communicated to the State. We nevertheless conclude that the fact that Rhodes requested such an offer be made is a clear indication that Rhodes was aware he could make offers and counteroffers to the State.
*914 Rhodes suggested his own counteroffer and therefore could not have been prejudiced by any failure of trial counsel to inform him that such offers could be made. There is no indication from the record that had trial counsel informed Rhodes of this right, the results of the plea negotiation process would have been different. Rhodes has therefore failed to meet his burden of showing he was prejudiced by any alleged deficiency in his counsel's performance. Rhodes' second assignment of error is without merit.

Failure to Inform Rhodes of Right to Testify.
In his third assignment of error, Rhodes asserts that he received ineffective assistance of counsel when his counsel failed to inform Rhodes of Rhodes' right to testify in his own behalf. Rhodes contends he was not informed of his right to testify at his motion to suppress, nor was he informed he had the right to testify at trial.
We turn first to Rhodes' allegation that he was not informed he had the right to testify at trial. The district court's order specifically noted that the record was replete with references to the strategic reasons as to why Rhodes did not testify and that the matter was discussed with Rhodes. Our review of the record indicates that this finding was not clearly erroneous. Counsel testified at his deposition that he did not have any specific recollection of discussing with Rhodes the right to testify, but that as a general practice, he would have discussed it twice: initially, when all other rights were explained to Rhodes and, again, around the time of trial, when making a determination as to whether Rhodes would testify. More importantly, at his deposition, Rhodes testified repeatedly that he was aware he could testify and that he had discussed with counsel whether he should testify.
A defendant who has been fully informed of the right to testify may not acquiesce in his or her counsel's advice that he or she not testify, and then later claim that he or she did not voluntarily waive such right.[16] A review of the record shows that Rhodes was informed of his right to testify and acquiesced to counsel's advice that he should not testify. We therefore conclude that Rhodes has not met his burden of showing trial counsel's performance was deficient with respect to Rhodes' allegation regarding his right to testify at trial.
We next address Rhodes' allegation that he was not informed he had the right to testify at the hearing on his motion to suppress. Rhodes contends that had he known that he could testify at this hearing, he would have testified that
he used arm signals to signal his turn; that the temperature was cold and clothing he wore was not appropriate for that cold weather (undercutting testimony of law enforcement about [his] behavior); the slope of the road where the car was parked and how that would have effected [sic] whether the door was open; and that he ... was not Mirandized.[17]
Assuming, but not deciding, that counsel's performance was deficient, we nevertheless conclude Rhodes was not prejudiced by that performance with regard to Rhodes' right to testify at the hearing on his motion to suppress. First, Rhodes asserts he could have testified that he signaled his turn with an arm signal. However, such evidence was presented at the suppression hearing through the testimony *915 of Rhodes' passenger. Rhodes was not prejudiced by his inability to testify to this point where the evidence was nevertheless presented to the district court.
Rhodes also contends that he would have testified regarding the temperature and his attire at the time of the stop. Rhodes' proposed testimony is apparently aimed at testimony by the officers that Rhodes was "unsteady on his feet"; appeared "fidgety"; and was, in the officers' estimations, under the influence of drugs or alcohol. However, following trial, Rhodes was acquitted of the DUI charge. He could not have been prejudiced by his inability to rebut the officers' testimonies regarding whether he was under the influence when in fact he was found not guilty of such charge. We also note that one officer testified on both direct and cross-examination that the weather at the time of the stop was cold; therefore, this evidence was nevertheless presented to the district court.
Next, Rhodes argues he could have testified that the vehicle was parked on an incline during the stop. Apparently, this testimony would have been aimed at rebutting the testimony of one officer that the driver's side door was open at the time that he, the officer, identified the shotgun on the floor behind the front driver and passenger seats. Rhodes apparently contends this was not so, because he had closed the door upon exiting the vehicle and because the slope of the road would have made the door shut automatically. However, Rhodes does not explain, nor can we conceive of, what effect this would have had on the ultimate outcome of the suppression hearing. As such, Rhodes has again failed to establish how he was prejudiced by the fact that he did not testify.
Finally, Rhodes argues he would have testified that he was not given any Miranda warnings. But Rhodes' motion to suppress any statements taken in violation of Miranda was sustained, and no such statements were introduced into evidence. Thus, Rhodes suffered no prejudice by the lack of his testimony at the suppression hearing regarding his lack of Miranda warnings.
For the foregoing reasons, we conclude that Rhodes was not prejudiced by his counsel's alleged failure to inform Rhodes of his right to testify at his suppression hearing. In addition, we conclude that Rhodes and his counsel discussed Rhodes' right to testify at trial and that Rhodes acquiesced in counsel's opinion that he should not testify. As such, counsel's performance on this point was not deficient. Rhodes' third assignment of error is without merit.

Failure to Address Authority Regarding Use of Rhodes' Prior Felonies.
Finally, in his fourth assignment of error, Rhodes argues his counsel was ineffective for failing to argue that the use of one of his prior felonies to support both his underlying charge of being a felon in possession of a firearm and his habitual criminal enhancement was a violation of the Double Jeopardy and Due Process Clauses of the Nebraska and U.S. Constitutions.
A review of the record indicates that at trial, the State introduced evidence of Rhodes' 1988 attempted first degree sexual assault conviction in order to prove Rhodes was a felon and guilty of being a felon in possession of a firearm in violation of Neb.Rev.Stat. § 28-1206(1) (Reissue 2008). Then, after Rhodes was found guilty, the State introduced that same prior conviction at the enhancement hearing on the habitual criminal charge, as well as Rhodes' 1977 convictions for first degree sexual assault and sodomy. Rhodes contends that the use of the 1988 conviction both to prove the underlying charge and to *916 enhance his sentence was a violation of double jeopardy and due process.
This court has recently considered this issue. In State v. Ramirez,[18] we held that using the same offense both to establish the defendant's status as a felon and to enhance that defendant's sentence was not a violation of double jeopardy. Rhodes concedes that Ramirez is on point, but asks us to reconsider that decision. In support of this argument, Rhodes contends this court's decision in Ramirez implicitly acknowledged that there is an ambiguity in the underlying statutes and that the rule of lenity requires such ambiguity to be decided in Rhodes' favor. However, in Ramirez, we addressed and rejected the argument that the underlying statutes were ambiguous and specifically addressed the rule of lenity in that context. We therefore decline Rhodes' invitation to revisit Ramirez.
Because the use of the same felony both to establish Rhodes' status as a felon and to enhance his sentence was permissible, Rhodes' sentence was lawful. Accordingly, we conclude that Rhodes has not met his burden of showing he was prejudiced by his counsel's failure to object to the use of the same conviction for both purposes. Rhodes' fourth and final assignment is without merit.

CONCLUSION
The judgment of the district court denying Rhodes' motion for postconviction relief is affirmed.
AFFIRMED.
NOTES
[1] State v. Lopez, 274 Neb. 756, 743 N.W.2d 351 (2008).
[2] Id.
[3] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[4] State v. Lopez, supra note 1.
[5] Strickland v. Washington, supra note 3.
[6] State v. Lopez, supra note 1.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] State v. Ramirez, 274 Neb. 873, 745 N.W.2d 214 (2008).
[12] Id.
[13] Lipson v. U.S., 233 F.3d 942 (7th Cir. 2000).
[14] Brown v. Doe, 2 F.3d 1236 (2d Cir.1993).
[15] Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
[16] See Lema v. U.S., 987 F.2d 48 (1st Cir. 1993).
[17] Brief for appellant at 24.
[18] State v. Ramirez, supra note 11.