IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. HARRIS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

IRVIN B. HARRIS, JR., APPELLANT.


Filed May 5, 2020.    No. A-19-662.


Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Irvin B. Harris, Jr., appeals from the order of the district court for Douglas County denying postconviction relief after an evidentiary hearing. On appeal, Harris contends that his trial counsel provided ineffective assistance by not perfecting his direct appeal and that the district court therefore erred in denying postconviction relief. We affirm the order of the district court for the reasons that follow.

## BACKGROUND

Harris was charged with making terroristic threats, a Class IIIA felony, and possession of a firearm by a prohibited person, a Class IB felony, in relation to an incident where witnesses heard gunshots in their neighborhood and observed Harris "trolling" the neighborhood damaging vehicles. One witness reported that Harris pointed a firearm at him when he tried to intervene.

Police officers who arrived at the scene observed Harris lying in the front yard of a residence with a handgun next to him.

A plea agreement was negotiated whereby Harris agreed to plead no contest to the charge of being a prohibited person in possession of a firearm. The State agreed to dismiss the terroristic threats charge as well as a possession of a controlled substance charge against Harris in a separate case. Additionally, the parties agreed to jointly recommend a sentence of 20 to 30 years' imprisonment. Harris entered a no contest plea to the charge of being a prohibited person in possession of a firearm on August 3, 2016. The sentencing court followed the joint recommendation of the parties and sentenced Harris to a term of 20 to 30 years in prison. Harris did not file a direct appeal.

On August 30, 2017, Harris filed a verified motion for postconviction relief. He alleged that his trial counsel provided constitutionally ineffective assistance for three reasons. First, Harris alleged that his trial counsel failed to file a direct appeal despite his instructions to do so. Harris alleged that he instructed his trial counsel to file a direct appeal multiple times within 30 days of his sentencing via voicemails and letters directed to her office. Second, he alleged that his trial counsel provided ineffective assistance by advising him to tell the district court, when asked during the plea and sentencing hearing, that he was satisfied by his counsel's performance and had sufficient time to meet and discuss his case with her. Harris' third allegation was that his trial counsel provided ineffective assistance by failing to review police reports of the incident with him or discuss possible defenses prior to his plea hearing.

On December 13, 2017, the State filed a response to Harris' motion for postconviction relief. The State conceded that Harris had alleged sufficient facts to warrant an evidentiary hearing with respect to his first claim that his trial counsel provided ineffective assistance because she did not perfect a direct appeal. The State did not concede that an evidentiary hearing was necessary for the remaining issues set forth by Harris and requested that the court determine those claims after an evidentiary hearing on Harris' first claim.

The court entered an order granting an evidentiary hearing in part on December 19, 2017. It also appointed counsel to represent Harris in the postconviction proceeding. The court held an evidentiary hearing, and Harris' counsel offered two exhibits: exhibit 200, a deposition of Harris' trial counsel, and exhibit 201, a deposition of Harris.

Harris' trial counsel said in her deposition that his case first came into her office on November 25, 2015. She recounted the case against Harris. She said that there were reports of gunshots fired in a neighborhood and of Harris "trolling around" the same neighborhood damaging vehicles. A witness told police that Harris had pointed a firearm at him when he tried to intervene to stop Harris from damaging vehicles. When police arrived in the neighborhood, they found Harris lying in the front yard of a residence with a handgun next to him.

Trial counsel stated that she first met with Harris on December 3, 2015, regarding his preliminary hearing. She then had contact with him on three scheduled dates for a preliminary hearing, December 11 and 16, 2015, and January 11, 2016. A preliminary hearing finally occurred on January 25, 2016, at which time the case was bound over to the district court. Between that time and Harris' plea entry on August 3, 2016, his trial counsel met with him at the Douglas County Corrections Center on May 12 and August 1, 2016. Trial counsel stated that they discussed his

plea during their August 1 meeting. She said that she had filed motions to suppress and gone over the police reports prior to her meeting with Harris on August 1.

Trial counsel testified that a plea agreement was negotiated whereby Harris would plead to the firearm charge, and the State would dismiss the terroristic threats charge and would dismiss a charge for possession of a controlled substance that Harris had picked up after his arrest. She also testified that the State agreed not to file additional charges against him arising out of the charged incident, including a charge for attempted first degree assault and use of a weapon to commit a felony. The State also agreed not to file a habitual offender enhancement. Harris' trial counsel said that the parties agreed to a joint sentencing recommendation of 20 to 30 years' imprisonment. She specifically said that "everybody understood what the sentence was going to be," and that they ensured that the sentencing judge intended to follow their joint recommendation before Harris entered his plea.

Trial counsel stated that she did not typically discuss the strength of clients' cases with them but, instead, discussed the evidence that each side could present. She said that she discussed the facts of Harris' case with him during their meeting on August 1, 2016, which lasted approximately 45 minutes. She explained the plea offer, what entering a plea agreement would mean, and what would happen during the plea colloquy. In particular, trial counsel said that she informed Harris that, by entering a plea, he would forfeit his right to appeal the court's ruling on his motion to suppress and that the only issue that could form the basis of a direct appeal would be his sentence. She said that Harris did not immediately accept the plea agreement when she discussed it with him but that he called her office later the same day and told her to set up a plea and sentencing hearing. She said that the plea agreement was reasonable and that Harris appeared to feel that way as well.

Trial counsel said that Harris did not instruct her to file a direct appeal while they were together at either the plea or sentencing hearing. She said that she did not hear from him thereafter and specifically said that she never received a voicemail from Harris. Trial counsel also testified that she did not receive any written correspondence from him, nor did her boss, the Douglas County Public Defender. She stated that she did not send any written correspondence to Harris. She stated that there were no issues for direct appeal present in Harris' case aside from his sentence, which direct appeal she said "would not have been successful" because "he got the minimum sentence." She reiterated that Harris had agreed to the sentence. Despite her opinion that Harris' chances of a successful direct appeal were very low, trial counsel said that she would have nevertheless filed a direct appeal if he had instructed her to do so.

During his deposition, Harris gave a different account of events. He said that his trial counsel never told him about the evidence against him. According to Harris, his trial counsel told him she did not want to be in the courtroom if he proceeded to trial and that he would be sentenced to a term of 20 years' to life imprisonment. She told him that his sentence would be worse if he proceeded to trial rather than accepting a plea agreement. Harris said that his trial counsel told him that it was possible that the State would add a habitual offender enhancement if he went to trial instead of taking a plea deal.

Harris said that he asked his trial counsel to let him see the evidence against him and, in particular, to send him the police reports, but he never received any documents. However, he

acknowledged that his trial counsel brought some police reports to a meeting between them and that he looked at those police reports. Nevertheless, Harris also said that he wanted to actually see the evidence against him rather than his trial counsel just telling him there was "strong evidence against [him]."

Harris stated during his deposition that he spoke to his trial counsel at the plea and sentencing hearing and told her that he wanted to file a direct appeal and asked how to start the appeal process. He also stated that he wanted to "get that rolling" because he understood that he only had 30 days from his sentencing to file a direct appeal. Harris said that he wanted to file a direct appeal because he thought that his sentence was excessive and that his trial counsel was ineffective. When he was cross-examined during his deposition, Harris affirmed his agreement to the joint sentencing recommendation of 20 to 30 years' imprisonment and recognized that it was at the lower end of the statutory sentencing range. However, he reiterated that he wanted to appeal the sentence as excessive because he had not seen the evidence against him.

Harris testified that his trial counsel told him to leave a message with her secretary and to write a letter to her, both of which he said that he did. He said that he wrote a letter and left numerous voicemails. Harris said that he did not remember the date on which he mailed a letter to his trial counsel but was certain that it was within 30 days of his sentencing. When he did not get a response, Harris said that he also wrote to his trial counsel's boss. He acknowledged that this letter may have been written more than 30 days after his sentencing. Harris said that he received no replies to any of his efforts to communicate. He said that he also wrote to his sentencing judge in January 2017 asking what he could do.

Sometime after 30 days had passed from his sentencing date, Harris said that he called his trial counsel's office, and the secretary told him that a direct appeal had not been filed in his case. He eventually filed his own postconviction action on August 30, 2017.

On June 11, 2019, the district court entered an order denying postconviction relief. The court evaluated the evidence from Harris and his trial counsel and determined that trial counsel's testimony was more credible. Both parties said that trial counsel had explained the plea agreement and discussed with him that a direct appeal in his plea-based case was unlikely to be successful, especially considering that the parties agreed to the imposed sentence. The court found that trial counsel's testimony that Harris had never directed her to file a direct appeal either at the time of his sentencing or through telephone messages or letters at any time after his sentencing was more credible than his testimony that he had instructed her to file a direct appeal. The court concluded that trial counsel had acted in a professionally reasonable manner. The court also noted that Harris waited almost an entire year from the date of his sentencing before filing his motion that alleged his trial counsel failed to file a direct appeal in contravention of his expressed wishes. Finally, the court found that Harris had failed to state sufficient facts regarding the two other claims of ineffective counsel in his motion for postconviction relief and, thus, denied those claims.

Harris now appeals.

## ASSIGNMENT OF ERROR

On appeal, Harris' sole assignment of error is that the district court erred in denying his motion for postconviction relief with respect to trial counsel's failure to perfect a direct appeal in his case.

## STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). An appellate court upholds the trial court's factual findings unless they are clearly erroneous. *Id*.

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Beehn, supra*.

## ANALYSIS

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Vela, supra*.

Relief under the Nebraska Postconviction Act is a very narrow category of relief. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). Notably, a petition for postconviction relief is not merely a second direct appeal. "It is well established that a petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal. Any attempts to raise issues at the postconviction stage that were or could have been raised on direct appeal are procedurally barred." *State v. Dubray*, 294 Neb. 937, 949, 885 N.W.2d 540, 552 (2016).

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." The right to counsel has been interpreted to include the right to effective counsel. *State v. Dubray, supra*. Under the standard established by the U.S. Supreme Court in *Strickland v. Washington, supra*, claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient and, second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial. *State v. Dubray, supra*.

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is,

counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Lopez*, 274 Neb. 756, 743 N.W.2d 351 (2008). In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Lopez, supra*. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. Prejudice will be presumed and counsel will be deemed ineffective--thus entitling the defendant to postconviction relief--where, after a trial, conviction, and sentencing, counsel fails to file or perfect an appeal after being so directed by the criminal defendant. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016).

Harris argues that his trial counsel provided ineffective assistance by failing to file a direct appeal after he instructed her to do so at the sentencing hearing and via telephone messages and letters during the 30 days following his sentencing. The State argues in reply that Harris' trial counsel's more credible testimony demonstrated that Harris never indicated a desire to file a direct appeal. Based on our review, we find that the district court did not err in denying Harris' motion for postconviction relief.

The State conceded that Harris' motion for postconviction relief alleged sufficient facts to warrant an evidentiary hearing, and the court scheduled such hearing at which time depositions of Harris and his trial counsel were admitted into evidence. Harris and his trial counsel both testified regarding the filing of a direct appeal, but their testimony was directly contradictory. Harris said that he told his trial counsel at his sentencing hearing that he wished to file a direct appeal and that his counsel replied by instructing him to contact her office. Harris said that he then called her office and left multiple voicemails during the 30 days following his sentencing. He also said that he wrote letters to his trial counsel during that time period. In contrast, trial counsel testified that Harris never communicated a desire to appeal his plea-based conviction and sentence, which conformed to the parties' joint sentencing recommendation. Trial counsel said that Harris never left her voicemails, mailed letters, or told her at the sentencing hearing that he wanted to file a direct appeal.

The district court, after reviewing the depositions of Harris and his trial counsel, determined that the testimony of Harris' trial counsel was more credible. The district court, as the trier of fact, resolves conflicts in the evidence. Under our standard of review, we uphold the district court's resolution of such conflicts unless clearly erroneous. Here, we find no clear error. See *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

The only question remaining, then, is whether Harris' trial counsel's failure to perfect a direct appeal when she was never instructed to do so by her client demonstrates ineffective assistance. It does not. Trial counsel testified during her deposition that she explained to Harris the ramifications of him entering into a plea agreement with the State. She also testified regarding the benefits Harris received by entering into a plea agreement, particularly the dismissal of other charges and the avoidance of the State adding a habitual offender enhancement. As part of the plea agreement, the parties jointly recommended a sentence, which was accepted and imposed by the sentencing judge. For these reasons, we find that trial counsel's performance was not deficient.

Her performance equaled that of a lawyer with ordinary training and skill in criminal law in the area. Accordingly, we affirm the order of the district court denying Harris' motion for postconviction relief.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Harris' motion for postconviction relief.

AFFIRMED.