/s/ Ernest A. Finney, Jr., C.J.
/s/ Jean H. Toal, J.
/s/ James E. Moore, J.
/s/ John H. Waller, Jr., J.
/s/ E.C. Burnett, III, J.

In the Matter of Thomas M. RICHARDSON, Jr.
(471 S.E. (2d) 146)

Supreme Court

May 10, 1996.

## ORDER

Respondent pled guilty to assault and battery of a high and aggravated nature and indecent exposure. The Board of Commissioners on Grievances and Discipline asks this Court to temporarily suspend respondent from the practice of law in this State pursuant to Paragraph 6 of the Rules on Disciplinary Procedure, Rule 413, SCACR.

IT IS ORDERED that the petition is granted and respondent is temporarily suspended from the practice of law until further order of this Court.

/s/ Ernest A. Finney, Jr., C.J.
FOR THE COURT

WALLER, J., not participating.

24423

Ernest Lee JUDGE, Respondent v. STATE of South Carolina, Petitioner.
(471 S.E. (2d) 146)

Supreme Court

*Attorney General Charles Molony Condon, Deputy Attorney General J. Emory Smith, Jr., Assistant Attorney General Teresa Nesbitt Cosby, Staff Attorney G. Robert DeLoach, III,* Columbia, *for Petitioner.*

*Deputy Chief Attorney Joseph L. Savitz, III,* of *S.C. Office of Appellate Defense,* Columbia, *for Respondent.*

Submitted Sept. 21, 1995.

Decided May 13, 1996; Reh. Den. June 6, 1996.

## ON WRIT OF CERTIORARI

TOAL, Justice:

This case concerns the circumstances under which a petitioner is entitled to Post Conviction Relief when he claims his trial counsel was ineffective in advising him to reject a plea agreement.

### FACTUAL/PROCEDURAL BACKGROUND

Ernest Lee Judge was tried for murder in Berkeley County in January 1990. Immediately before trial, the solicitor's office for Berkeley County offered to allow Judge to plead guilty to voluntary manslaughter with a recommendation of a seven-

year sentencing cap. On the advice of his counsel, Judge rejected the offer and elected instead to go to trial. The jury convicted Judge of murder, and he was sentenced to life imprisonment.

On appeal, Judge argued only that the trial court had erred in admitting certain impeachment evidence. This Court affirmed his conviction in a *per curiam* opinion. *See State v. Judge*, No. 91-MO-194 (S.C. 1991) (memo.)

In his application for Post Conviction Relief (PCR), Judge asserted both ineffective assistance of counsel and prosecutorial misconduct. The primary basis for his ineffective assistance claim was his counsel's advice to reject the plea agreement offered by the solicitor's office. His claim of prosecutorial misconduct was based on the failure of the prosecutor's office to give his attorneys certain materials as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963). Importantly, his attorneys advised him to reject the plea agreement before they had received or had had any opportunity to review all the materials they had requested.

The PCR court granted Judge's application for Post Conviction Relief, finding that Judge's trial lawyer had lacked sufficient information to advise him effectively regarding the proposed plea agreement. We granted certiorari to review the PCR court's order.

## LAW/ANALYSIS

The State contends the PCR court erred in finding that trial counsel rendered ineffective assistance during plea negotiations.[1] We agree.

For petitioner to be granted Post Conviction Relief as a result of ineffective assistance of counsel, he must show both (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms,

---

[1] To some extent, the PCR court's order combines the finding of ineffective assistance with a finding concerning prosecutorial misconduct. In other words, the order finds that Judge's counsel were ineffective partly *as a result of* the failure of the solicitor's office to furnish them with *Brady* materials. Because Judge could have raised the prosecution's misconduct on direct appeal, but did not, any claim arising from such misconduct is barred. *See, e.g., Stepney v. State*, 278 S.C. 47, 292 S.E. (2d) 41 (1982) (issues that could have been raised on direct appeal cannot be considered on postconviction relief application absent a claim of ineffective assistance of appellant counsel). To the extent the lower court Order was based on prosecutorial misconduct, it is vacated.

and (2) that he was prejudiced by his counsel's ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. (2d) 674 (1984); *Butler v. State*, 286 S.C. 441, 334 S.E. (2d) 813 (1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed. (2d) 908 (1986). The United States Supreme Court haS held that a defendant who has pled guilty to a crime and later asserts ineffective assistance of counsel must establish that there is a reasonable probability that he would not have pled guilty but for counsel's performance. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. (2d) 203 (1985). However, neither the United States Supreme Court nor this Court has defined fully the scope of a defendant's Sixth Amendment rights when the defendant asserts ineffective assistance of counsel that resulted in the defendant's *refusal* to accept a plea bargain.

Most federal and state courts addressing the issue have held that the Sixth Amendment right to effective assistance of counsel in a criminal proceeding applies not only to a defendant's decision to plead guilty but also to the decision to reject an offered plea bargain. *See, e.g., Toro v. Fairman*, 940 F. (2d) 1065, 1067 (7th Cir. 1991) ("A criminal defendant has a right to effective assistance of counsel in deciding whether to accept or reject a proposed plea agreement."), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed. (2d) 907 (1992); *accord Johnson v. Duckworth*, 793 F. (2d) 898 (7th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed. (2d) 367 (1986); *United States ex rel. Caruso v. Zelinsky*, 689 F. (2d) 435 (3d Cir. 1982); *Beckham v. Wainwright*, 639 F. (2d) 262 (5th Cir. Unit B 1981); *Turner v. Tennessee*, 664 F. Supp. 1113 (M.D. Tenn. 1987), *aff'd*, 858 F. (2d) 1201 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed. (2d) 559 (1989).

Nevertheless, some have argued that petitioners should not be entitled to postconviction relief based on claims of ineffective assistance of counsel during the plea bargaining stage, when the plea bargain ultimately is rejected and the defendant proceeds to trial. Such an argument stems from the view that "the right-to-counsel guarantee of the Sixth Amendment exists only to protect other rights, either 'simply to ensure that criminal defendants receive a fair trial,' ... or to ensure that, when defendants plead guilty, their waivers of rights to a

trial by jury, to confrontation, and against self-incrimination are knowing and voluntary.... In this asymmetrical view, a defendant electing not to plead and to go to trial waives no rights, indeed he does the very opposite by invoking his Sixth Amendment right to go to trial." *Turner v. Tennessee*, 664 F. Supp. 1113, 1119 (M.D. Tenn. 1987) (citations omitted), *aff'd*, 858 F. (2d) 1201 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed. (2d) 559 (1989).

Our research has not found any federal court that has accepted this argument. The United States District Court for the Middle District of Tennessee has provided a thorough and thoughtful analysis of the issue in *Turner, supra*. There, the district court concluded that the above argument "takes an unrealistic and fragmented view of this most critical stage in the criminal process." *Id.* This Court said:

> This narrow view of the right to counsel has at least two flaws. One is that Sixth Amendment protection of the ineffectively counseled decision to plead guilty, but non-protection of the ineffectively counseled decision to go to trial, would ignore the reality that these two decisions are alternative outcomes of the same attorney-client interaction....
>
> To accept or reject a plea offer presents a binary choice at a fork in the road; providing constitutional protection against an incompetent shove in one direction, but not against an equally incompetent shove in the other, may produce unwanted skewing of the results. Like the character in the short story, criminal defendants facing this choice under asymmetrical constitutional protection may begin to see one alternative as the lady and the other as the tiger. Unforeseeable and undesirable effects on the overall functioning of the plea-negotiation process could ensue.
>
> The second flaw in the asymmetrical approach is that it ignores the full implications of an ineffectively counseled decision to go to trial. A defendant in Turner's position has not merely rejected a plea offer; he has made a decision to go to trial "with a grave misconception as to the very nature of the proceeding and possible consequences."

The plea-rejection process thus necessarily implies a corollary election to go to trial. If the adversary system of plea negotiation has worked well, defense counsel's advice on the "choice among the alternative courses of action open to the defendant," has reflected a balancing of the more certain outcome under a guilty plea, the degree of uncertainty of result at trial, and the worst possible penalties that could result from trial.

*Id.* at 1120 (citations omitted). We agree with the reasoning of the district court in *Turner* and thus hold that the Sixth Amendment protects criminal defendants against ineffective assistance of counsel during the plea bargaining process, even if the plea offered ultimately is rejected.

Of course, a petitioner still must prove both ineffective assistance in counsel's advice to reject a plea agreement, as well as prejudice resulting from that ineffectiveness.

### A. Standard for Attorney Competence During Plea Negotiations

In the context of rejected plea agreements, it is often quite difficult to determine whether counsel failed to provide reasonably effective assistance under prevailing professional norms. Nevertheless, courts have found certain omissions by counsel constitute incompetence almost *per se.* For example, in *United States ex rel. Caruso v. Zelinsky, supra,* the United States Court of Appeals for the Third Circuit held that "in the ordinary case, a failure of counsel to advise his client of a plea bargain would constitute a gross deviation from accepted professional standards." *Zelinsky,* 689 F. (2d) at 438. *But see Johnson v. Duckworth, supra* (holding defendant received effective assistance of counsel notwithstanding counsel's rejecting plea bargain without allowing defendant any role in decision; however, acknowledging exceptional facts of case and counsel's general duty to inform defendant of plea bargain and to allow defendant to make ultimate decision). Similarly, advice by counsel to a defendant to reject a plea agreement when such advice is not based on an evaluation of the merits of the case and of the risks borne by the defendant, but on counsel's desire for trial publicity, generally constitutes professional incompetence. *See, e.g., Larson v. State,* 104 Nev. 691, 766 P. (2d) 261 (1988) (holding counsel's advice to reject

plea agreement incompetent where advice was based on attorney's belief that trial publicity would bring him increased clientele and national acclaim).

In contrast, counsel's advice to reject a plea agreement ██ does not fall below the reasonably effective assistance standard simply because, in hindsight, the advice was wrong or the attorney's trial tactics backfired. In *In re Alvernaz*, 2 Cal. (4th) 924, 8 Cal. Rptr. (2d) 713, 830 P. (2d) 747 (1992), the California Supreme Court defined the parameters of attorney competence in the area of plea rejections as follows:

> We caution that a defense attorney's simple misjudgment as to the strength of the prosecution's case, the chances of acquittal, or the sentence a defendant is likely to receive upon conviction, among other matters involving the exercise of counsel's judgment, will not, without more, give rise to a claim of ineffective assistance of counsel.

*Id.*, 8 Cal. Rptr. (2d) at 721, 830 P. (2d) at 755. Describing the court's evaluation of attorneys' trial tactics as "highly deferential," the United States District Court for the Middle District of Tennessee stated:

> [J]udicial scrutiny of defense counsel's performance should . . . avoid second-guessing, and begin with a "strong presumption" that counsel's conduct fell within "the wide range of reasonable professional assistance." Deference is particularly due attorney decisions concerning strategy and tactics. Some circuit courts have concluded, thus, that this type of choice by counsel will be held ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it" or it was so "ill-chosen" as to render counsel's overall representation constitutionally defective.

*Turner, supra*, at 1121 (citations omitted). Even employing this deferential standard, however, courts occasionally will find that attorneys rendered ineffective assistance in advising a defendant to reject a plea agreement. *See, e.g., id.* (finding counsel was ineffective in advising defendant to reject offer of guilty plea to a felony with a two-year sentence, where original charges were for first-degree murder and two counts of

aggravated kidnapping and where at PCR hearing other lawyers testifies that the decision to go to trial was "ludicrous").

B. Prejudice in Rejection of Plea Agreements

The second prong of the ineffective assistance inquiry—prejudice—is shown by demonstration "through *objective* evidence . . . [the existence of] a reasonable probability that, but for counsel's advice, [the defendant] would have accepted the plea." *Id.* (Emphasis added.) Mere statements by the PCR petitioner that he would have accepted the plea agreement but for counsel's incompetence are insufficient to show prejudice because they are self-serving and inherently unreliable. *See id.; see also Turner v. Tennessee, supra,* at 1121 ("Turner testified that if [his lawyer] had ever advised him to accept the offer, he 'would have taken it, because I relief [sic] on his judgment.' This testimony, by itself, is subjective, self-serving, and in the Court's view insufficient to satisfy the *Strickland* requirement for prejudice. There is objective evidence in the record, however, that tends to corroborate Turner's claim and provides independent reason to believe that there is a significant probability that, had [his lawyer's] advice been reasonable, Turner would have accepted the offer.").

Applying the law to the facts of the present case, it is clear that the lower court erred in concluding Judge was entitled to Post Conviction Relief based on ineffective assistance of counsel. Judge argues his trial counsel were incompetent in failing to wait to receive certain *Brady* materials—a ballistics report, and autopsy report, and part of Judge's "rap" sheet—before advising him whether to accept the voluntary manslaughter plea offered by the prosecution. However, the record of the PCR proceeding indicates that Judge's lawyers were not aware of there materials; rather, they thought the prosecution had given them all the materials to which they were entitled (*See* R. pp. 647-48, 656). Counsel cannot be incompetent in failing to wait to receive material they had no reason to know existed.

Moreover, even assuming Judge's counsel were incompetent in failing to wait for all the *Brady* evidence before advising Judge whether to reject the voluntary manslaughter plea, there is no evidence that reasonably sup-

ports the PCR court's finding that Judge suffered prejudice as a result of counsel's ineffective assistance. *See Cherry v. State,* 300 S.C. 115, 386 S.E. (2d) 624 (1989) (holding "any evidence" standard is appropriate standard of review for PCR cases). Although Judge established at the PCR hearing that he probably would have relied on whatever advice his counsel gave him,[2] he presented no evidence establishing a reasonable probability that his trial lawyers would have recommended that he accept the plea agreement even had they reviewed all the *Brady* materials before they advised him. When trial counsel advised Judge to reject the plea agreement, they did not yet have in their possession a ballistics report, an autopsy report, and part of Judge's "rap" sheet (R. pp. 622-23.) However, there was no evidence presented at the PCR hearing whether or how these materials might have affected counsel's advice to Judge concerning the plea offer. In the absence of such evidence, there can be no showing of prejudice.

Accordingly, the decision of the PCR court is REVERSED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.

---

[2] The objective evidence demonstrates Judge's reliance on his lawyers' judgment regarding acceptance or rejection of the plea agreement. At the PCR proceeding, one of Judge's lawyers in the murder case testified as to Judge's reliance on the lawyers' judgement:

Q: Let's talk about that. What exactly did didn't [lawyer] discuss with Mr. Judge about this plea?
A: [Lawyer] told Mr. Judge what the offer was [voluntary manslaughter with a seven-year cap]. At that point Mr. Judge basically asked [Lawyer], *"What should I do? What do you think I should do?"* [Lawyer] basically said, "Well, I would reject it. I think we ought to reject it and go to the trial." At that point Mr. Judge said something to the effect, *Whatever you say ... that is what I will do.* We then went to trial (R. p. 616) (Emphasis added).

This evidence makes clear that Judge probably would have accepted the plea agreement had his attorneys recommended acceptance.