Richard S. CARMICHAEL, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 07SC478.

Supreme Court of Colorado,
En Banc.

April 13, 2009.

Rehearing Denied May 11, 2009.*

* Justice Coats would grant the petition; Justice Eid does not participate.

Douglas K. Wilson, Public Defender, Karen N. Taylor, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

In 2001, Richard Carmichael faced a number of criminal charges, including two charges of third degree sexual assault on a child stemming from two incidents involving two different children. Because of the seriousness of the charges against him, Carmichael faced a minimum sentence of twenty years of probation and, at maximum, two indeterminate life sentences if convicted at trial. The prosecuting attorney offered Carmichael a plea bargain, under which Carmichael would receive an indeterminate sentence of probation with a minimum of ten years. On advice of counsel, Carmichael rejected that plea bargain and proceeded to trial, where he was convicted and sentenced to twenty years of probation. Following his conviction, Carmichael filed a motion requesting a new trial, alleging ineffective assistance of counsel stemming from his attorney's failure to fully explain the relative benefits of the plea offer. The trial court denied this motion and Carmichael appealed. The court of appeals upheld the trial court's decision to deny the motion.

We granted certiorari and now reverse. We apply the ineffective assistance of counsel standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard we find that Carmichael's representation was constitutionally deficient and that inadequate representation caused him substantial prejudice, as supported by objective evidence. Because we are able to resolve this case on ineffective assistance of counsel grounds, we decline to address the remaining issues involved in this appeal.

## II. Facts and Procedural History

### A. R.R. Incident

On an unknown date in the spring or summer of 2000, R.R. and her friend A.B. spent the night at Sheree Carmichael's house, after a dance at the local recreation center. Sheree Carmichael is Michael Carmichael's daughter. A.B. testified the girls went to

sleep in the Carmichael basement around 1:00 a.m., with A.B. and R.R. sleeping on separate couches and Sheree sleeping on the floor. A.B. testified that she fell asleep right away, but was awakened a few hours later by a light shining in her eyes. R.R. and Sheree continued sleeping. Pretending to be asleep, A.B. claimed she saw Carmichael shining a flashlight over the girls, and subsequently observed Carmichael approach R.R., lift her shirt, and touch her breast. R.R., who was thirteen at the time, did not wake up and does not have any recollection of this incident. At trial, A.B. stated that, after several minutes, she observed Carmichael stand up and turn off the flashlight. A.B. testified she heard a loud noise, but the other girls did not wake up. Carmichael then left the basement and returned upstairs.

The following day, the three girls spent the day together at the Carmichael house. A.B. told R.R. what she observed. The two also told Sheree about the incident, but the girls decided to keep it a secret.

Carmichael and his wife, Sheila Carmichael, testified that, on the night in question, they were asleep in their bedroom, when Sheila heard a loud noise and woke Carmichael to investigate. Carmichael checked the house with a flashlight, including the basement. While Carmichael was in the basement, Sheila stood at the top of the stairs. Sheila testified that she never lost sight of Carmichael as he looked into, but did not enter, the room where the girls were sleeping. In the morning, Sheila found a fallen window blind in the basement and assumed it was the cause of the noise.

Authorities did not learn about the R.R. incident until the mother of the other alleged victim, J.V.N., informed police during an investigation of the second, subsequent, incident. J.V.N.'s mother learned about the first event through the following chain of communication: A.B. told Sheree, Sheree told J.V.N., and J.V.N. told her mother.

## B. J.V.N. Incident

Prior to this incident, J.V.N. and her family were very close to the Carmichaels. Carmichael and J.V.N.'s father are first cousins, and J.V.N. spent a great deal of time at the Carmichael family home.

On June 6, 2000, J.V.N., who was thirteen years old at the time, returned from a multi-day camping trip with the Carmichael family. Rather than returning to her own home, J.V.N. decided to spend the night at the Carmichael home. J.V.N. testified that she was playing with Sheree and a few other friends in the Carmichael basement. Over the course of the evening, she accepted four or five shots of alcohol from Carmichael. Carmichael also offered shots to Sheree and his son, Chad. Offering small amounts of alcohol to the children was an accepted practice in both the V.N. and Carmichael families.

Later that evening, J.V.N. came back upstairs and lay down on the couch to go to sleep. Carmichael was lying on a loveseat nearby. J.V.N. stated that, as she pretended to be asleep, Carmichael moved over to the couch, touched her hand several times, lifted her shirt, and touched her stomach. When J.V.N. pretended to wake up, Carmichael moved back to the loveseat. Carmichael, in contrast, testified that he placed a blanket on J.V.N. and removed her shoes when she fell asleep.

Soon thereafter, J.V.N. returned to the basement, woke Sheree and told Sheree what happened. J.V.N.'s dad came to pick her up and J.V.N. reported the incident to police the next day. Carmichael maintained that he never touched J.V.N., other than possibly brushing her hand or stomach while placing a blanket over her.

## C. Trial

In February 2001, police arrested Richard Carmichael and charged him with one count of sexual assault on a child by one in a position of trust involving R.R., one count of sexual assault on a child involving R.R., one count of contributing to the delinquency of a minor, one count of criminal attempt to commit sexual assault on a child by one in a position of trust involving J.V.N., and two counts of criminal attempt to commit sexual assault in the third degree, one each for the R.R. and J.V.N. incidents.

Faced with these serious charges, Carmichael retained the counsel of attorney Carl Fritz. Mr. Fritz met with his client to discuss the charged offenses. Mr. Fritz explained the elements of each charged offense, but did not inform Carmichael that he faced two indeterminate life sentences if convicted. Mr. Fritz informed Carmichael of the requirements of probation for a sexual offense.

On April 17, 2001, the date of a scheduled preliminary hearing, the Arapahoe County District Attorney's office informed Mr. Fritz that if Carmichael was willing to plead to one class four count of sexual assault on a child the prosecution would agree to dismiss the remaining charges and stipulate to a sentence of indeterminate probation, with a ten year minimum.

Mr. Fritz informed Carmichael of this proffered plea offer. Mr. Fritz stated in a subsequent affidavit that he failed to inform Carmichael that rejection of the plea bargain and conviction at trial of the charged offenses could expose Carmichael to the possibility of two mandatory consecutive indeterminate life sentences, with no guarantee of parole. Mr. Fritz did not tell Carmichael that the minimum length of probationary supervision he would receive if convicted at trial would be twenty years, twice the minimum he would be facing if he accepted the plea offer. Mr. Fritz also stated that he did not give Carmichael any advice regarding the favorability of the plea bargain but did incorrectly state that, if convicted at trial, Carmichael would end up with the same probationary sentence offered in the plea bargain. Carmichael rejected the plea offer later that day. Mr. Fritz was unaware Carmichael faced the possibility of indeterminate life sentences until he learned this information while awaiting the jury verdict.

In October of 2001, Carmichael went to trial. The jury acquitted him of attempting to inappropriately touch J.V.N. but convicted him of the charges relating to R.R. Carmichael was sentenced to twenty years of probation.

Carmichael, upon learning of Mr. Fritz's deficient advice, filed a motion for a new trial due to ineffective assistance of counsel. Carmichael testified that if he had known the penalties he actually faced by going to trial, he would have pleaded guilty to a class four felony of sexual assault against a child with a stipulated minimum ten years of probation. The trial court concluded Mr. Fritz's representation during the plea-bargaining process was deficient, but determined that deficiency did not materially prejudice Carmichael.

### D. Appeal

Carmichael filed a timely notice of appeal and requested a designation of the trial court record in May of 2002. This record was to be completed by the following June. The assigned court reporter, Valerie Barnes, was unable to meet her deadlines for transcribing the record. Other reporters hired to complete the record were unable to do so because Ms. Barnes' notes were unreadable and incomplete.

In August of 2003, still lacking a complete trial court record, Carmichael filed a motion to vacate his conviction for violation of his due process right to a timely appeal. This motion was remanded to the trial court, along with several other cases with records dependent on Ms. Barnes' notes. Counsel for Carmichael and a number of other affected defendants issued subpoenas to involved court reporters, seeking their testimony as to the quality of Ms. Barnes' work. Despite Carmichael's ongoing insistence that the trial court record remained incomplete, the record was deemed sufficiently complete in November of 2005. The case was recertified by the court of appeals in 2006, which affirmed Carmichael's convictions. The court of appeals affirmed the trial court's ruling on ineffective assistance of counsel based on "record support" for the trial court's conclusion Carmichael would not have accepted the plea offer, regardless of his attorney's advice. *People v. Carmichael*, 179 P.3d 47, 53 (Colo.App.2007).

Carmichael sought review from this court. We granted certiorari,[1] and we now reverse.

1. We granted certiorari on the following five issues:

1. Whether a defendant is denied his constitutional right to the effective assistance of counsel when counsel does not know that the po-

## III. Analysis

### A. The Right to Counsel

▆▆▆ An individual accused of a crime has a right to counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. This right extends to "every critical stage of a criminal proceeding." *Key v. People*, 865 P.2d 822, 825 (Colo.1994). "Stages of criminal proceedings have been held to be 'critical' where there exists more than a 'minimal risk' that the absence of the defendant's counsel might impair the defendant's right to a fair trial." *Id.* (quoting *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)).

The United States Supreme Court and this court have held the acceptance of a plea offer and entry of a guilty plea is a critical stage, creating an entitlement to counsel. *Iowa v. Tovar*, 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); *People v. Roybal*, 618 P.2d 1121, 1126 (Colo.1980). Acceptance of a plea bargain is a critical stage, according to the United States Supreme Court, because assistance of counsel is necessary "so that the accused may know precisely what he is doing, so that he is aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 33, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). This reasoning is applicable to the entire plea bargaining process, not just the decision to enter a guilty plea. A defendant's decision whether to plead guilty or proceed to trial "is ordinarily the most important single decision in any criminal case." *Boria v. Keane*, 99 F.3d 492, 496–97 (2d Cir.1996) (internal quotations omitted).

▆▆▆ Thus, all jurisdictions to consider this question have found rejection of a plea offer to be a critical stage, entitling a defendant to effective assistance of counsel.[2] A defendant will engage in the same evaluative, weighing process when considering a plea offer, regardless of whether he ultimately chooses to accept that offer. In order to make an informed evaluation of an offered plea deal, a defendant must be represented by counsel, or have intelligently waived that right. It is this process of informed evaluation that the right to counsel is designed to protect in plea negotiations, not a particular outcome.

▆▆▆ "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To succeed on a claim of ineffective assistance of counsel, a defendant must meet the two-prong test set forth by the United States Supreme Court in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant

---

tential penalty for the charged offense is an indeterminate life sentence in prison and, based on that misinformation, the defendant rejects a plea agreement for probation.

2. Whether a defendant's conviction should be reversed when the defendant challenges a juror for cause, the district court denies the challenge based on colloquy between the juror and the prosecutor, and that colloquy does not appear in the appellate record.

3. Whether the trial court erred when it refused to grant the defense's challenge for cause to a juror who expressed doubt on her juror questionnaire as to whether she could be fair and impartial in the case.

4. Whether the lack of an accurate, complete record of appeal violates the defendant's due process rights.

5. Whether the inordinate delay in preparing the record on appeal violated the defendant's due process rights to a speedy appeal.

**2.** *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir.2003); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir.1998); *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992); *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir.1991); *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir.1988), vacated on other grounds by *Tennessee v. Turner*, 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989); *Johnson*, 793 F.2d at 900; *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. Unit B Mar.1981); *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193, 1200 (Ct.App.2000); *In re Alvernaz*, 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 754–55 (1992); *Copas v. Comm'r of Corr.*, 234 Conn. 139, 662 A.2d 718, 725 (1995); *Cottle v. State*, 733 So.2d 963, 965–66 (Fla.1999); *Cleveland v. State*, 674 S.E.2d 289, 290, 2009 WL 578531, *2 (Ga.2009); *People v. Curry*, 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877, 882 (1997); *Commonwealth v. Mahar*, 442 Mass. 11, 809 N.E.2d 989, 992 (2004); *State v. Rhodes*, 277 Neb. 316, 761 N.W.2d 907, 913 (2009); *Commonwealth v. Napper*, 254 Pa.Super. 54, 385 A.2d 521, 524 (1978); *Judge v. State*, 321 S.C. 554, 471 S.E.2d 146, 149 (1996), overruled on other grounds by *Jackson v. State*, 342 S.C. 95, 535 S.E.2d 926 (2000); *State v. Lentowski*, 212 Wis.2d 849, 569 N.W.2d 758, 760–61 (App.1997).

must show the attorney's performance was "deficient." *Id.* at 687, 104 S.Ct. 2052. Second, the defendant must show he suffered prejudice as a result of this deficient performance. *Id.* We hold Carmichael has satisfied both prongs of this test.

## B. Deficient Performance

For a defendant to show his attorney's performance was constitutionally deficient, he must demonstrate counsel made errors so serious "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Day*, 969 F.2d at 43. Thus, counsel's failure to present defendant with the opportunity to make that reasonably informed decision will constitute deficient representation.

The parties agree Mr. Fritz's representation in this case was deficient. We find this deficiency to be particularly aggravated. Mr. Fritz fundamentally misunderstood the potential consequences of the charges against Carmichael. Mr. Fritz testified that he was unaware of the specialized sentencing requirements for sex offenders under the Sex Offender Lifetime Supervision Act, § 16–13–804, C.R.S. (2000). Instead, he mistakenly believed Carmichael would be subject to general felony sentencing guidelines. This mistake, combined with a failure to conduct adequate research, led Mr. Fritz to tell Carmichael he "would qualify for probation and he would not be doing any time," even if convicted at trial. At no time did Mr. Fritz tell Carmichael that he would face indeterminate life sentences if he went to trial and lost.

Therefore, when the prosecuting attorney made a plea offer to Carmichael, he was unable to properly evaluate the attractiveness of that offer. Carmichael faced a minimum twenty year indeterminate probationary sentence and a maximum sentence of two indeterminate life sentences with no guarantee of probation. § 16–13–804, C.R.S. (2000). Carmichael was offered a sentence of indeterminate probation with a ten year minimum in return for pleading guilty to one class four felony count of sexual assault on a child. Operating under a fundamental misunderstanding of the applicable law, Mr. Fritz told Carmichael that the plea offer was essentially identical to the punishment Carmichael would face if convicted at trial, and characterized the offer as "not acceptable." Trial Court Transcript, 16, 38, February 28, 2002. In reliance on Mr. Fritz's advice, Carmichael rejected the plea offer. *Id.* at 79.

Mr. Fritz, by his own admission, did not provide Carmichael with an opportunity to make a reasonably informed decision regarding the relative benefits of the offered plea bargain. Mr. Fritz stated he allowed Carmichael to reject the plea bargain offer without informing him that the plea would reduce Carmichael's minimum probation exposure from twenty to ten years or that, at trial, Carmichael would be exposed to one or more indeterminate life sentences in the Department of Corrections.

"Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision of whether to plead guilty." *Day*, 969 F.2d at 43. Thus, Mr. Fritz's failure to appropriately counsel his client regarding the attractiveness of the plea bargain in relation to the risks of going to trial was constitutionally deficient performance. *See United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (deeming attorney's gross underestimation of defendant's sentencing exposure to be a breach of duty constituting deficient representation). We therefore turn to the second prong of the inquiry.

## C. Prejudice

To establish prejudice, a defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. In other words, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. *See also People v. Garcia*, 815 P.2d 937, 941 (Colo.

1991) (adopting *Strickland* ). In this context, Carmichael must demonstrate there is a reasonable probability that, but for counsel's errors, he would have accepted the plea offer rather than going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■ A number of federal circuits require a defendant to provide some objective evidence supporting his or her own self-serving claims of prejudice. *See Moses v. United States,* 175 F.3d 1025, 1025, 1999 WL 195675 (8th Cir.1999); *Gordon,* 156 F.3d at 381; *Bachicha v. Shanks,* 66 F.3d 338, 338, 1995 WL 539467 (10th Cir.1995); *Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir.1991).; *But see Smith v. United States,* 348 F.3d 545, 551 (6th Cir.2003) (rejecting an objective evidence standard). *Strickland* itself does not require a defendant to provide this kind of corroborating evidence of prejudice. It only requires a defendant demonstrate a "reasonable probability" that counsel's error materially affected the outcome of the proceeding. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Nonetheless, we believe the ineffective assistance of counsel inquiry is aided by an objective evidence standard. We believe a defendant's post-conviction testimony that he would have accepted the plea offer is, in and of itself, insufficient to establish prejudice. We look for some objective corroborating evidence of the reasonable probability that Carmichael would have accepted the plea offer if not for Mr. Fritz's deficient counsel.

■ Carmichael satisfies this objective evidence standard. Carmichael's testimony is supported by at least three corroborating sources of evidence. First, Mr. Fritz testified to his belief that Carmichael rejected the plea bargain offer in reliance on his deficient advice. *See Day,* 969 F.2d at 46 (stating defense attorney's statements confirming the existence of prejudice may satisfy the objective evidence standard); *People v. Curry,* 178 Ill.2d 509, 227. Ill.Dec. 395, 687 N.E.2d 877, 888–89 (1997) (deeming defense counsel's affidavit confirming prejudice sufficient objective evidence).

Second, there is a large disparity between the sentence exposure as represented to Carmichael by Mr. Fritz and the actual exposure Carmichael faced by going to trial. *See Gordon,* 156 F.3d at 381 ("[T]he fact that there is a great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney provides sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ."). Here, Carmichael faced a minimum twenty year indeterminate probationary sentence, and a maximum sentence of two indeterminate life sentences with no guarantee of parole. § 16–13–804, C.R.S. (2000). Carmichael was offered a sentence of indeterminate probation with a ten year minimum in return for pleading guilty to one class four felony count of sexual assault on a child. Mr. Fritz mistakenly represented the minimum sentence Carmichael would receive if convicted at trial as ten years of probation, the same as the plea offer. In addition, Mr. Fritz incorrectly stated that acceptance of the plea offer would not represent a material reduction in the sentence Carmichael faced if he decided to proceed to trial. We believe a discrepancy of ten years in the minimum of highly supervised probation is sufficiently large as to provide objective evidence of prejudice.

Third, Carmichael, though his counsel, was affirmatively pursuing a plea bargain despite his proclamations of innocence. Mr. Fritz testified that Carmichael "encouraged" him to obtain a plea bargain. In addition, Mr. Fritz's co-counsel, Mr. Hammond, testified that plea negotiations continued until the day of trial, when he had a discussion with opposing counsel about a possible plea agreement. This active pursuit of a plea lends credibility to Carmichael's testimony that he was amenable to a plea bargain and would have accepted an offer, had he been properly counseled.

■ Once some independent, objective evidence is introduced to support a defendant's claim of prejudice, a trial court has discretion to weigh the various evidence and reach a conclusion regarding whether the defendant was harmed by counsel's ineffective representation. The prejudice determination is a mixed question of law and fact.

*Cullen v. United States*, 194 F.3d 401, 405 (2d Cir.1999). Thus, while we review a trial court's factual findings for abuse of discretion, we review the application of law to those findings de novo.

We disagree with the trial court's finding of no prejudice in this case. First, in considering the existence of objective evidence supporting Carmichael's claim of prejudice, the court stated,

> (unreadable) look carefully for corroborating testimony in the testimony of Mr. Fritz and Mr. Hammond, and any tangible evidence that would have led me to believe that the Defendant would have taken the plea bargain had he been given adequate advisement, and I cannot see an indication of that. So, for lack of corroboration on that issue, and as I think we've (unreadable) specificities to arrive at that finding, I'm going to find at this time (unreadable) that prong of the test has not been met.

Trial Court Transcript, 19, February 25, 2001. As discussed above, we find at least three sources of objective evidence corroborating Carmichael's prejudice. We therefore find the trial court abused its discretion by failing to consider that evidence in making its determination.

■ Second, the trial court, considering the evidence of prejudice, stated,

> The court will then (unreadable) it's been established that there is a reasonable probability, based on a preponderance of the evidence, that absent the deficient advice the result would be different, which in this context means that the—if the advice had been correct and a proper range would have been spread before him (unreadable) accepted the proffered plea bargain, I'm not going to trial, and not gone to trial I don't feel bound by. But I do find myself in agreement with the Colorado Supreme Court when they say post-trial (unreadable) by a defendant are to be reviewed suspiciously.

*Id.* at 17. We believe the trial court employed an incorrect standard when it held that, even if objective corroborating evidence were presented, a defendant's claim of prejudice is nonetheless presumed to be unreliable. We believe the operation of this type of presumption is improper. Once objective evidence has been supplied to support a defendant's claim, the trial court should review the evidence without supplying additional weight or suspicions to either side's claims.

Ultimately, the trial court found Carmichael suffered no prejudice as a result of Mr. Fritz's inadequate performance, largely because the trial court judge did not believe Carmichael would ever be willing to admit guilt as part of a plea bargain. The trial court stated,

> The problem I am in here is that I have difficulties believing in my heart, knowing Defendant as I do through my observation of him over the past several months—I have difficulties believing that particular defendant would have taken the offered plea bargain, notwithstanding proper and accurate advisement. Why do I say this? I say this because of the way he—completely, repeatedly and vigorously the Defendant had protested his innocence throughout the trial process, that by all accounts with accurate advice at trial that he gave up his right to remain silent and testified, and vigorously, and fairly (unreadable) maintained his innocence at the time of trial.

*Id.* at 18. Thus, it seems the trial court's finding of no prejudice is wholly based on Carmichael's assertion of innocence at trial.

■ However, a defendant may maintain his innocence while nonetheless entering into a valid plea agreement. The United States Supreme Court considered whether an admission of guilt is necessary to a valid plea agreement in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford*, the defendant maintained "I'm not guilty but I plead guilty." *Id.* at 29 n. 2, 91 S.Ct. 160. The Supreme Court found a defendant could enter into a valid plea agreement without admitting guilt, because "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of a criminal penalty." *Id.* at 37, 91 S.Ct. 160. Thus, the Supreme Court has specifically acknowledged the reality that individuals who maintain their inno-

cence may nonetheless decide to accept a plea offer.

Therefore, we believe a defendant's protestations of innocence, standing alone, are insufficient to support a finding of no prejudice when weighed against objective evidence of prejudice. *See Cullen,* 194 F.3d at 407 ("Though [defendant's] insistence of his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty, it is not dispositive."). A large number of defendants will enter into the criminal justice system maintaining their innocence, only to later admit to the criminal acts they have committed. In addition, a defense attorney's accurate presentation of available outcomes may encourage a defendant to admit his actions and face the applicable consequences. A defendant who receives inadequate and defective counsel regarding the options available to him through a plea bargain or at trial is deprived of this opportunity to intelligently evaluate the situation. Thus, a defense attorney is required to "explain developments in the case to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," including available plea offers, regardless of a defendant's claims of innocence. Criminal Justice Section Standard 4–3.8 (American Bar Ass'n, 1990). An attorney's failure to provide this information to defendant deprives him of an opportunity to reassess his statements of innocence.

The trial court's reliance on Carmichael's insistence of innocence is particularly troubling where, as here, a trial judge's opinions regarding the likelihood a defendant would accept a plea offer are based on personal and subjective impressions, rather than identifiable words or actions of this particular defendant that we could review as record support for the court's conclusion. Although an evaluation of prejudice will require a trial court to make credibility determinations regarding relevant testimony, we find no record support for the trial court's conclusion.

Here, there is evidence of prejudice. The only remaining support for the conclusion of no prejudice is the trial court judge's belief that Carmichael would be unwilling to plead guilty, because he insisted he was innocent. Because protestations of innocence by a defendant are not dispositive of the prejudice inquiry, we find they are insufficient, as a matter of law, to outweigh the objective evidence of prejudice presented by defendant.

### D. Remedy

■■■■ The remedy for constitutionally deficient performance by counsel "should be tailored to the injury suffered and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). To address the injury suffered by Carmichael here, we order a new trial, providing Carmichael an opportunity to engage in plea negotiations with the benefit of effective counsel. *Riggs v. Fairman,* 399 F.3d 1179, 1184 (9th Cir.2005) ("When ineffective assistance of counsel has deprived a defendant of a plea bargain, a court may choose to vacate the conviction and return the parties to the plea bargaining stage.").

A new trial with effective counsel will restore Carmichael to the position he enjoyed prior to Mr. Fritz's flawed performance. While some courts have held an order for a new trial must be supplemented with a requirement that the prosecution subsequently reinstate the previous plea offer, *see Leatherman v. Palmer,* 583 F.Supp.2d 849, 871 (W.D.Mich.2008) (citing *Satterlee v. Wolfenbarger,* 453 F.3d 362, 370–71 n. 7 (6th Cir. 2006)), we believe such a remedy is not narrowly tailored to address the injury suffered. Access to an attractive plea offer is not a constitutional right, and thus the constitution does not require an offer to be reinstated. Rather, a defendant who has received ineffective assistance of counsel has been deprived of his constitutional right to effective counsel and competent counsel will address this injury. To focus the remedy on the foregone plea offer is to confuse the nature of the injury suffered. Rather than losing the benefit of the potential plea bargain, the defendant has lost the effective assistance of counsel to which he is constitutionally entitled. Thus, a restoration of that counsel, rather than a mandated sentencing outcome,

is the most narrowly tailored way to address the prejudice suffered by Carmichael.

When proceedings for this new trial are undertaken, the parties may, of course, reengage in plea negotiations. By restoring Carmichael's right to trial, he will have a bargaining position similar to that which he enjoyed in 2001. This will provide Carmichael with the opportunity to engage in plea negotiations with the benefit of effective representation and counsel.

## IV. Conclusion

We find Mr. Fritz's representation of Carmichael was constitutionally deficient. Further, adopting the objective evidence standard, we find Carmichael presented sufficient objective corroborating evidence to support his contention of prejudice. Because we resolve this case on the basis of the ineffective assistance of counsel claim, we decline to reach the other arguments raised by Carmichael. We therefore reverse judgment of the court of appeals, and remand the case to the district court for a new trial.

Justice COATS dissents.

Justice EID does not participate.

JUSTICE COATS, dissenting.

Because I believe the majority extends United States Supreme Court jurisprudence in a way that was never contemplated and would not be sanctioned by that court, and because I believe the majority misapplies even its newly adopted standard of materiality to the circumstances of this case, I respectfully dissent.

Unlike the majority, I consider it clear that the Supreme Court has never extended a remedy for ineffective assistance of counsel to the plea-bargaining process. In its seminal holding in *Hill v. Lockhart*, it found simply that a defense counsel's deficiencies could be considered material if they resulted in a mistaken waiver of trial rights and entry of a guilty plea. 474 U.S. 52, 58–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Far from holding that the plea-bargaining process itself constitutes a "proceeding" or that a defendant could be entitled to a remedy for his counsel's failure to negotiate or adequately advise him concerning a plea deal, the Supreme Court's holding in *Hill* rested firmly on its conclusion that a guilty plea cannot be considered voluntary or effective if it would not have been entered but for defense counsel's unreasonably deficient assistance. *Id.*

Similarly, when the Supreme Court referred in *Strickland v. Washington* to the likelihood that the outcome of a proceeding might be different, it was embellishing upon its definition of materiality in the ineffective assistance context as an error or deficiency sufficiently grave to undermine confidence in the outcome of a legal proceeding. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The thrust of its holding was that the notion of prejudice goes to the reliability of a defendant's conviction or punishment. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052; *cf. Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (Powell, J., concurring) (emphasizing that the right to effective assistance is concerned with defendant's right to fair and reliable determination of his guilt or innocence). It nowhere suggested that a criminal defendant is prejudiced, in the constitutional sense, by his counsel's failure, even if unreasonable, to avoid a trial proceeding fairly determining the defendant's guilt or innocence of the charges against him.

For purposes of materiality, the question is not whether the "entire plea bargaining process" is a critical stage of a criminal proceeding, but assuming it is, what proceeding is it a critical stage of. Unlike the acceptance of a plea offer, which results in the termination of a criminal proceeding by entry of a guilty plea, the rejection of a plea offer permits the criminal proceeding to continue to trial and verdict. Confidence in the outcome of a criminal trial could be undermined by a defendant's failure to accept a plea offer only in the contrived sense that by pleading guilty to something else, he may have been able to avoid a proceeding to determine his guilt or innocence of the more serious offense altogether.

Even if the standard of materiality for deficiencies in plea negotiations adopted in a number of other jurisdictions, and now by

the majority, were to ultimately be upheld by the United States Supreme Court, I believe the record in this case could not entitle the defendant to relief. Both the plea deal rejected by the defendant and his exposure upon proceeding to trial involved conviction of a felony sex offense, with all that entails, including registration as a sex offender and an indeterminate sentence with life at its upper end. Whether or not this defense counsel fully understood the intricacies of sentencing under the Lifetime Supervision of Sex Offenders Act, he clearly advised the defendant (and the defendant understood) that the plea offer would include a recommendation to probation rather than a prison sentence, which he risked by going to trial, but that he was likely to be sentenced to probation in any event.

The only difference between the defendant's actual sentence and the lowest possible sentence he may have received by taking the plea offer was the discretion to terminate his lifetime sentence to intensive supervision probation after only ten years in the latter case, as distinguished from twenty years in the former. In view of the substantial advantages to be gained and the minimal risks assumed by proceeding to trial, I consider the majority's assessment of the likelihood that the defendant would have chosen to plead guilty, had he understood the disparity, to be unrealistic. I also think its conclusion in this case demonstrates the illusory nature of the majority's "objective evidence standard."

By accepting the plea deal, the defendant would have foregone the opportunity to establish his innocence, which he steadfastly maintained throughout, and avoid the stigma of being forced to register as a felony sex offender. In exchange, he was likely to gain nothing but the right to be *considered* for release from probation sooner. The record indicates that despite some deficiencies in his counsel's advisement (although not in the court's Crim P. 5 advisement of the possible sentence he risked), the defendant was correctly advised that even the possibility of earlier release from probation would almost surely be contingent upon his willingness to admit and discuss his sexual offenses as part of his sex offender treatment, which he appeared, at the time, unwilling to do. Where the defendant faced lifetime probation (if not revocation and subsequent imprisonment) in either case, surely the likelihood of his early release would have to be the determinative factor.

Finally, I would not consider the majority's remedy appropriate, even if I believed the constitution provided the defendant a remedy for ineffective plea bargaining. While I agree that the defendant should not be entitled to demand the plea offer he earlier rejected, I fail to see why his conviction should be vacated without regard to his entry of a guilty plea. In the past, where we have found error affecting only a greater offense, we have considered it appropriate to remand for either a new trial on the greater charge or entry of judgment on a lesser included offense, *at the choice of the prosecution. See, e.g., Crespin v. People,* 721 P.2d 688, 692–92 (Colo.1986); *cf. In re: People v. Lopez,* 148 P.3d 121, 125 (Colo.2006) (withholding judgment whether same rationale should apply to resentencing following *Blakely* violation). Where a defendant is prejudiced, if at all, only by unintelligently foregoing a particular plea offer, and the prosecutor is willing to make the same offer, I see no reason why the defendant should be entitled to again reject that offer and proceed to trial a second time.

Unlike the majority, I consider it clear that the Supreme Court has not thus far extended its remedy for ineffective assistance of counsel to include ineffective plea negotiating; and in light of its existing jurisprudence, I do not look for it to do so. In any event, I would not anticipate the Supreme Court's extension of its ineffective assistance materiality standard in a case in which that standard is, in my view, so clearly not satisfied anyway.

I therefore respectfully dissent.