23CA0021 Peo v Sanders 06-12-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA0021
Jefferson County District Court No. 11CR219
Honorable Randall C. Arp, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Victor Everitt Sanders,

Defendant-Appellant.

_____

ORDER AFFIRMED

Division VI
Opinion by JUDGE YUN
Tow and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

_____

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney
General & Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Chelsea A. Carr, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Victor Everitt Sanders appeals the postconviction court's order denying his Crim. P. 35(c) motion following an evidentiary hearing. He contends the postconviction court erred by failing (1) to find that his counsel provided ineffective assistance in connection with plea negotiations; (2) to consider evidence of his counsel's suspension and disbarment; and (3) to reopen the evidence to hear testimony about his counsel's statements. We reject these contentions and affirm the order.

## I.    Procedural Background

¶ 2    In 2011, Lakewood Police Department officers arrested K.M., a juvenile, following an undercover prostitution sting operation. K.M. identified Sanders as her pimp, and the People charged him with trafficking in children, pandering of a child, pimping of a child, procurement of a child, and contributing to the delinquency of a minor. The charges were later amended to also include one count of sexual assault and four crime of violence sentence enhancers.

¶ 3    Sanders was initially represented by attorney Katherine Spengler from the public defender's office. Following her initial appointment, Spengler discussed the charges with Sanders and advised him of the potential penalties he could face if convicted.

1

¶ 4     In March 2011, the prosecution offered Sanders a plea deal in which he would plead guilty to pimping of a child and contributing to the delinquency of a minor with no sentencing concessions, and in return, the prosecution would drop the remaining charges. Spengler communicated the offer to Sanders, but they did not discuss it in detail because he had decided to hire private counsel. The prosecution indicated that the offer would remain open until mid-September 2011.

¶ 5     In April 2011, Sanders hired attorney Nitche Ward to represent him.[1] Ward represented Sanders until she withdrew from his case near the end of October 2011. During Ward's representation, Sanders did not respond to the plea offer, and it expired. After Ward withdrew, Spengler was reappointed to represent Sanders.

¶ 6     At trial, the jury acquitted Sanders of the sexual assault charge and deadlocked on the trafficking in children charge;[2] however, the jury found him guilty on the remaining charges,

---

[1] Another attorney, Richard Fiore, assisted Ward in representing Sanders. However, Fiore's representation of Sanders is not relevant to this appeal.

[2] The prosecution later dismissed the trafficking in children charge.

including two of the four sentence enhancers.  Sanders received an aggregate sentence of thirty-four years in prison, and a division of this court affirmed his conviction on direct appeal.  *People v. Sanders*, slip op. at 21 (Colo. App. No. 12CA2343, May 5, 2016) (not published pursuant to C.A.R. 35(e)).

¶ 7    In 2015, while Sanders's direct appeal was pending, Ward's law license was suspended because of her "fail[ure] to competently and diligently represent many of her clients" between 2010 and 2013.  This suspension was due, in part, to her failures to file documents, to appear for hearings, to pursue and review discovery, and to provide effective assistance of counsel to a criminal defendant.  In 2017, Ward was ultimately disbarred because of her conduct in representing two bankruptcy clients.[3]

¶ 8    In 2018, Sanders filed a pro se Crim. P. 35(c) motion, claiming ineffective assistance of counsel on multiple grounds.  The postconviction court denied his motion without a hearing.  Sanders

---

[3] Specifically, Ward was disbarred for failing to notify her clients of her suspension, failing to communicate with clients, making misrepresentations to her clients and the bankruptcy trustees, violating fee-related rules, failing to appear at hearings, canceling creditors' meetings, violating court orders to disgorge her fees, and obstructing the disciplinary proceedings.

appealed, and a division of this court reversed in part, concluding he was entitled to a hearing on his ineffective assistance of plea counsel claim. *People v. Sanders*, slip op. at ¶ 44 (Colo. App. No. 18CA2365, July 30, 2020) (not published pursuant to C.A.R. 35(e)). But the division affirmed the postconviction court's order regarding his remaining claims. *Id.* at ¶¶ 13-24.

## II.   Crim P. 35(c) Hearing

On remand, Sanders filed a supplemental Crim. P. 35(c) motion, alleging that Ward provided ineffective assistance in connection with the plea offer. The same judge presided over Sanders's case from its inception through the postconviction proceedings. As relevant here, the postconviction court considered Ward's disciplinary records and heard testimony from Spengler, Sanders, and a defense expert. However, it did not hear testimony from Ward.[4]

---

[4] Neither Sanders's postconviction counsel nor his hired investigator were able to thoroughly interview Ward before the hearing.

4

## A. Ward's Disciplinary Records

¶ 10 At the hearing, Sanders argued that the court should consider Ward's disciplinary history as evidence of a pattern of misconduct that included the time period when she represented him. In response, the prosecution argued that the disciplinary actions were irrelevant and constituted improper character evidence because the misconduct Ward was sanctioned for was not connected to Sanders's case. The court noted its concern that the disciplinary records appeared to be character evidence; however, the court allowed its admission, stating that it would "look at it and give it the weight it's entitled to. I'm just foreshadowing that may not be much."

## B. Spengler's Testimony

¶ 11 Spengler testified that she discussed the strength of Sanders's case with him, explaining that she believed there were weaknesses in the prosecution's case due to K.M.'s other cases and credibility issues. Spengler also recalled that Sanders asked about the plea offer once she was reappointed; however, after she informed him that the offer had expired, Sanders responded that he would not have taken a plea anyway.

## C. Sanders's Testimony

¶ 12    Sanders testified that he hired Ward because he believed private counsel would represent him better than a public defender. He said that he never intended to go to trial and that he hired Ward specifically to negotiate a better plea deal. Based on his conversations with Ward, Sanders believed that if he took his case to trial, he would face a potential prison sentence similar to the existing plea offer. He also testified that Ward advised him that the prosecution's case was weak due to the "he said, she said" nature of the evidence.

¶ 13    On cross-examination, Sanders told the court that, after Spengler was reappointed to his case, he asked about the status of the plea deal out of curiosity. Despite this inquiry, Sanders admitted that he had no interest in accepting a plea deal at that time.

¶ 14    At several points in the hearing, the court sustained the prosecution's objections to Sanders's testimony about Ward's alleged statements but permitted him to testify about his understanding of the plea offer, the strength of his case, and the sentencing exposure.

## D. Defense Expert's Testimony

¶ 15 Randy Canney, an expert qualified in ineffective assistance of counsel, opined that Ward provided ineffective assistance when she advised Sanders regarding the weaknesses in the prosecution's case and Sanders's potential sentencing exposure. He testified that he believed that the prosecution's case against Sanders was "relatively strong" and that Ward's explanation of his sentencing exposure "would have been bad advice."

## E. Postconviction Court's Ruling

¶ 16 The court ordered the parties to submit written closing arguments and allowed them to present additional argument concerning the hearsay issue and the admissibility of Ward's alleged statements to Sanders.

¶ 17 In its written order, the court reconsidered its prior ruling that prohibited witnesses from testifying about Ward's specific statements and decided to admit evidence of Ward's advice to Sanders. However, the court declined to reopen the hearing, stating that additional testimony would not be "helpful" since the court was aware of the advice that Ward allegedly gave Sanders.

¶ 18    Considering the first prong under *Strickland v. Washington,* 466 U.S. 668 (1984), the court found that Sanders failed to show that Ward's representation fell below an objectively reasonable standard. While the court noted that Ward's advice — that Sanders may not face much more time by taking his case to trial — "if true, [was] problematic," the court found that Sanders's testimony regarding Ward's advice was not credible for three reasons.

¶ 19    First, the court noted that Sanders provided no evidence outside of his testimony to corroborate Ward's alleged advice, such as notes, statements from his attorneys, or conversations with family members regarding the advice he received.

¶ 20    Second, the court concluded that Ward's alleged advice was clearly an opinion. The court noted that Spengler testified that she fully advised Sanders "regarding the charges and the possible sentences applicable to those charges" and that it was "not reasonable or plausible to suggest [that] the risk of going to trial would not be more than the [eighteen] years offered in the plea deal."

¶ 21    Third, the court found that Sanders's own assessment of his case led him to believe that he would not face significant risk by

proceeding to trial because he had reviewed the charging documents himself and concluded that the prosecution's case was not strong on the more severe charges (sexual assault and pandering) and that he only faced potential conviction on the lesser charges (pimping and contributing to the delinquency of a minor).

¶ 22 The court also concluded that Sanders failed to establish prejudice under *Strickland*. Again, the court found that Sanders did not provide any objective corroborating evidence to show that he would have accepted the plea deal but for Ward's alleged advice. And the court noted that Sanders told Spengler he would not have taken a plea deal anyway.

¶ 23 Lastly, the court addressed Ward's disciplinary records. The court concluded that the records were propensity evidence and had "no bearing on [Ward's] representation of [Sanders] for this 35(c)."

### III. Analysis

¶ 24 Sanders contends that the postconviction court erred by denying his Crim. P. 35(c) motion because Ward provided ineffective assistance by misadvising him about the strength of his case and the potential sentencing exposure if he went to trial. He also contends that the court failed to consider evidence of Ward's

suspension and disbarment, that the court failed to reopen the evidence to hear testimony about Ward's statements, and that Ward failed to obtain discovery before the deadline to accept the plea offer. We address these contentions in turn.

### A. Governing Law and Standard of Review

¶ 25 A criminal defendant is constitutionally entitled to effective assistance from his counsel. *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). This right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

¶ 26 To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687; *Ardolino*, 69 P.3d at 76. It is the defendant's burden to establish both *Strickland* prongs, *People v. Corson*, 2016 CO 33, ¶ 34, and failing to prove either of these two prongs defeats an ineffective assistance claim, *People v. Thompson*, 2020 COA 117, ¶ 50.

¶ 27 To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "[J]udicial

10

scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 28 An attorney's performance is deficient if she fails to present her client with the opportunity to make a reasonably informed decision about whether to accept a plea offer. *Carmichael v. People*, 206 P.3d 800, 806 (Colo. 2009), *overruled on other grounds as recognized by People v. Delgado*, 2019 COA 55. "Failure to correctly advise a defendant about his sentencing exposure deprives the defendant of the opportunity to make a reasonably informed decision whether to accept or reject an offer and constitutes deficient performance under *Strickland*." *Delgado*, ¶ 17.

¶ 29 To establish prejudice in the context of a rejected plea offer, a defendant must show a reasonable probability that (1) he would have accepted the plea offer if counsel had correctly advised him; (2) the prosecution would not have withdrawn the offer, and the court would have accepted the agreement; and (3) the conviction, sentence, or both under the plea offer's terms would have been less

severe than those imposed by the judgment and sentence. *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 6 (citing *Lafler*, 566 U.S. at 162).

¶ 30     In reviewing the denial of a Crim. P. 35(c) motion after a hearing, we review the postconviction court's conclusions of law de novo but defer to its findings of fact if they are supported by the evidence. *People v. Villanueva*, 2016 COA 70, ¶ 28. "The weight and credibility to be given the testimony of witnesses in a Crim. P. 35(c) hearing is within the province of the [postconviction] court and when there is sufficient evidence in the record to support the court's findings, its ruling will not be disturbed on review." *People v. Williams*, 908 P.2d 1157, 1161 (Colo. App. 1995).

## B.     Deficient Performance

¶ 31     Sanders asserts that the postconviction court erred by concluding that he failed to establish deficient performance. We disagree.

¶ 32     First, record evidence supports the postconviction court's finding that Ward's assessment of the weaknesses in the prosecution's case constituted "a professional judgment well within the range of reasonable representation." At the hearing, Spengler explained that she believed the prosecution's case was weak due to

significant credibility issues with K.M., who had motive to blame Sanders to avoid her own legal troubles. And despite the defense expert's belief that Ward's performance was deficient, even he concluded that the prosecution's case against Sanders "wasn't ironclad." Indeed, the jury acquitted Sanders of one charge and was deadlocked on another charge, indicating that even the jury found some aspects of the prosecution's case lacking.

¶ 33 Like Ward, both Sanders and Spengler reasonably believed that there were significant weaknesses in the prosecution's case. This assessment is not rendered erroneous merely because Sanders was convicted at trial. *See People v. Gandiaga*, 70 P.3d 523, 525 (Colo. App. 2002) ("The constitutional right to effective assistance of counsel 'is not a guarantee against mistakes of strategy or exercise of judgment in the course of a trial as viewed through the 20-20 vision of hindsight following the return of a verdict in a criminal case.'" (quoting *Dolan v. People*, 449 P.2d 828, 830 (Colo. 1969))).

¶ 34 Nor are we persuaded by Sanders's assertion that Ward provided him with objectively deficient advice concerning his sentencing exposure if he rejected the plea offer and went to trial. While the postconviction court acknowledged that Ward's alleged

13

advice, if true, was "problematic," it found that Sanders's testimony was not credible.

¶ 35    Importantly, the postconviction court noted that Sanders's testimony was not corroborated or supported by any other evidence. Indeed, the court found a complete absence of objective evidence — such as a file note, discussions with family about the advice, or a conversation with Spengler — to suggest that Ward actually provided the alleged advice.

¶ 36    The record also supports the postconviction court's conclusion that Sanders was aware of his sentencing exposure. Spengler testified that she fully advised Sanders of the charges and the possible sentences associated with each charge when she was initially appointed. Likewise, Sanders acknowledged Spengler discussed the charges with him before he hired private counsel. Thus, Sanders was — at a minimum — aware of the potential penalties he might face if convicted.

¶ 37    Furthermore, Sanders testified that he reviewed both the charging documents and the discovery materials, which led him to believe that the prosecution's case concerning the more serious charges was weak. Sanders explained that he thought he would

14

only face potential conviction on the charges of pimping and contributing to the delinquency of a minor. While Sanders testified that his beliefs were based — at least in part — on his conversations with Ward, the postconviction court was not persuaded by his recollection, and the court was not bound to accept his description of events as true. *See Williams*, 908 P.2d at 1161 (the weight and credibility given to a witness's testimony in a Crim. P. 35(c) hearing is within the postconviction court's discretion). Indeed, based on his testimony, the postconviction court deemed Sanders's version of events as incredible. We will not reconsider the postconviction court's credibility determinations on appeal. *See People v. Harlan*, 109 P.3d 616, 627-28 (Colo. 2005) ("[W]e cannot second-guess the determinations of the trial court regarding witness credibility.").

¶ 38 Accordingly, we conclude that the postconviction court did not err by finding that Sanders failed to establish the deficient performance prong under *Strickland*.

## C. Prejudice

¶ 39 Sanders also contends that the postconviction court erred by concluding that he failed to establish prejudice. Again, we disagree.

15

¶ 40    The record supports the postconviction court's conclusion. To establish prejudice in the context of a declined plea, a defendant must demonstrate, as relevant here, a reasonable probability that he would have accepted the plea offer had he been properly advised. *Delgado*, ¶ 21.

¶ 41    "[A] defendant's post-conviction testimony that he would have accepted the plea offer is, in and of itself, insufficient to establish prejudice." *Carmichael*, 206 P.3d at 807-08; *see also People v. Sifuentes*, 2017 COA 48M, ¶ 20 ("Some objective evidence must corroborate the defendant's testimony that he would have made a different decision about the plea if he had been properly advised."). In support of his claim that he would have accepted the plea offer if not for Ward's advice, Sanders offered only his testimony. But the postconviction court did not believe his statements. *See Williams*, 908 P.2d at 1161. Indeed, Sanders himself explained that he thought the prosecution's case was weak and that he believed he only faced conviction on the less severe charges against him. And, rather than offering evidence of his continued desire to pursue a plea deal, Sanders said that he only asked Spengler about the plea offer in the days before the trial because he was "curious."

Moreover, Spengler testified that during her pretrial discussion with Sanders, he expressed his unwillingness to accept any plea deal.

¶ 42 Sanders did not present any "objectively corroborating evidence" showing a reasonable probability that he would have accepted the plea offer; thus, he failed to prove prejudice. *Cf. Carmichael*, 206 P.3d at 807-08 (noting that objective evidence, such as supporting testimony from counsel, showing that the defendant was pursuing a plea deal satisfied this standard).

¶ 43 Consequently, we conclude that the postconviction did not err by finding that Sanders also failed to establish the prejudice prong of *Strickland*.

### D. Sanders's Other Contentions

¶ 44 Sanders raises three additional assertions of error that he claims undermined the postconviction court's ineffective assistance of counsel analysis. We address and reject each contention in turn.

¶ 45 First, Sanders argues that the postconviction court erred by "declin[ing] to consider . . . Ward's suspension and disbarment as part of its ineffective assistance of counsel analysis." The record, however, contradicts his assertion. At the postconviction hearing, the court permitted Sanders to offer Ward's disciplinary records as

evidence to support his claim. Moreover, the postconviction court explicitly stated that it would "look at [Ward's disciplinary history] and give it the weight [it was] entitled to." Thus, it appears that Sanders is actually taking issue with the weight the postconviction court assigned Ward's disciplinary records. That, however, is a determination left to the sound discretion of the postconviction court. *See Williams*, 908 P.2d at 1161. Indeed, the postconviction court examined Ward's disciplinary records and found them to be of limited value because they were largely propensity and character evidence unrelated to Sanders's case. Because the court considered the disciplinary records, we identify no error.

¶ 46 To the extent Sanders argues that the court committed legal error by not applying the factors from *People v. Kenny*, 30 P.3d 734, 744 (Colo. App. 2000), *overruled on other grounds by West v. People*, 2015 CO 5, to determine whether Ward was "incompetent as a matter of law," we disagree. *Kenny* applies only when the defendant's counsel was "less than fully licensed" while representing the defendant and presents a "totally separate" inquiry from the traditional *Strickland* analysis. *Id.* at 743-44. Ward's law

license was first suspended in 2015, well after her representation of Sanders ended in October 2011. *Kenny* therefore does not apply.

¶ 47 Second, Sanders argues that the postconviction court erred by refusing to reopen the hearing to admit additional evidence of the contents of Ward's statements. Again, we discern no error.

¶ 48 We review a court's ruling on a request to introduce evidence after closing for an abuse of discretion. *People v. Waters*, 641 P.2d 292, 294 (Colo. App. 1981). The postconviction court determined that further testimony about Ward's statements would not be beneficial because the court was already aware of Sanders's contentions. Specifically, the court said it was aware that Ward allegedly advised him that the prosecution's case was weak and that he would not face much more prison time if he rejected the plea offer and went to trial.

¶ 49 The postconviction court's determination is supported by the record because, as noted above, Sanders testified about his understanding of Ward's advice. Thus, the postconviction court did not abuse its discretion by declining to reopen the evidence. *See People v. Wilson*, 2014 COA 114, ¶ 35 ("[D]iscretion is abused only where no reasonable person would take the view adopted by the

19

trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." (quoting *People v. Hoover*, 165 P.3d 784, 802 (Colo. App. 2006))); *People v. Rhea*, 2014 COA 60, ¶ 58 ("[U]nder the abuse of discretion standard, the test is not 'whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options.'" (quoting *People v. Salazar*, 2012 CO 20, ¶ 32 (Bender, C.J., dissenting))).

¶ 50    Third, Sanders argues that Ward provided ineffective assistance because she failed to obtain and review discovery before the deadline to accept the plea. However, we decline to address his assertion because he did not preserve this claim. *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

¶ 51    Sanders did not raise concerns about Ward's alleged failure to pursue discovery as it related to the plea deal in his pro se postconviction motion, in his supplemental postconviction motion,

during the hearing, or in his written closing to the court. Arguing that the discovery issue is properly before this court, Sanders points to his original pro se postconviction motion, noting that he raised "the fact that Ms. Ward had not conducted any investigation or done any significant pretrial work" as part of his initial claim. He also states that he raised specific examples of how Ward's failure to access discovery led to her deficient representation.

¶ 52     But Sanders raised these alleged discovery issues as part of his original postconviction claim that both Ward and Spengler had failed to properly investigate his case. This claim was considered — and rejected — by a division of this court as part of Sanders's first postconviction appeal. *Sanders*, No. 18CA2365, slip op. at ¶¶ 13-24. At best, Sanders attempts to repackage his prior discovery allegations as part of his new claim. *See Leske v. Golder*, 124 P.3d 863, 865 (Colo. App. 2005) ("A defendant is prohibited from using a proceeding under Crim. P. 35(c) to relitigate issues fully and finally resolved in an earlier appeal.").

¶ 53     As a result, the claim is not properly before us, and we will not consider it on appeal.

## IV. Disposition

¶ 54    The order is affirmed.

JUDGE TOW and JUDGE SULLIVAN concur.